CRESLER v. ASHEVILLE.

(Filed March 8, 1904).

1. NEGLIGENCE—*Towns and Cities—Municipal Corporations—Sidewalks.*

A town or city is not liable in damages for an injury caused through the slipping of a person on its sidewalk on account of ice formed there at a season of the year when such formation of ice might be reasonably anticipated.

2. NEGLIGENCE—*Towns and Cities—Municipal Corporations—Ice—Sidewalks.*

It is error to instruct that the formation of ice on a sidewalk from a hydrant, during the course of a night, in a few hours, is, as a matter of law, negligence on the part of the city.

3. MUNICIPAL CORPORATIONS — *Towns and Cities—Notice—Acts (Private), 1895, ch. 100, secs. 96, 97.*

Where the charter of a city requires notice within a specified time of a claim before action can be brought, a claimant must allege and prove that the notice was given.

ACTION by Jane H. Cresler against the city of Asheville, heard by *Judge E. B. Jones* and a jury, at September Term, 1903, of the Superior Court of Buncombe County. From a judgment for the plaintiff, the defendant appealed.

*Locke Craig,* for the plaintiff.
*Davidson, Bourne & Parker,* for the defendant.

MONTGOMERY, J. It is the positive duty of the governing authorities of cities and towns to keep the streets, including the sidewalks, in proper repair, that is, as was said in *Bunch v. Edenton,* 90 N. C., 131, and *Russell v. Monroe,* 116 N. C., 720, 47 Am. St. Rep., 823: "the streets must be kept in such condition as that the people passing and repassing over them might at all times do so with reasonable ease, speed and safety; and proper repair implies that all bridges, dangerous

pits, embankments, dangerous walls and the like perilous
places and things, very near and adjoining the streets, shall
be guarded against by proper railings and barriers." It
was also decided in those cases that all persons using the
streets, including sidewalks, must do so in an "orderly man-
ner," but that they have a right to assume that the town au-
thorities have properly discharged their duties under their
powers and that the streets are in good repair, that the side-
walks are in safe condition and that nuisances near to and
adjoining them have been properly guarded.

In the case before us the plaintiff's claim for damages
against defendant city is based on the alleged negligence that
the city allowed water to escape from a hydrant, to flow over
the sidewalk and to freeze thereon during a spell of cold
weather, whereby the plaintiff, in going to her work early in
the morning before it was light, was caused to slip and fall
into a washout or gully by the side of the sidewalk, and
thereby became seriously injured. The alleged negligence,
then, was not that the sidewalk was *per se* dangerous, that is,
built or erected or kept in bad condition, but that the *icy
condition* of the sidewalk was the only negligence, or, rather,
that it was the negligent failure of the defendant to remove
the ice that lies at the foundation of the action. The defend-
ant requested his Honor to instruct the jury that "The slip-
pery condition of a sidewalk, resulting from ordinary ac-
cumulation of ice in winter, is not an actionable defect if
such accumulations are smooth; and if you find in this case
that the alleged injury of the plaintiff was due to such cause
you will answer the first issue 'No,' and not consider the
other issues." His Honor gave the instruction with the modi-
fication added after the word "winter" "not from neglect of
city." We think the modification was certainly misleading
to the jury and was therefore erroneous. The instruction
as originally prayed for simply meant that the law would not

hold liable in damages a town or city for an injury caused through the slipping of a person on its sidewalk on account of ice formed there at a season of the year when such formation of ice might be reasonably anticipated, and not through an unusual accumulation, and after being allowed to remain there for an unreasonable length of time. Putting that interpretation upon the prayer for instruction, we think it ought to have been substantially given.

It will never do to lay down the rule that in the cities and towns of North Carolina, covering, as they do in many instances, large areas not built upon, but provided with sidewalks, the municipalities should be liable in damages in cases of injury to persons caused by slipping from the natural formation of ice and sleet and fall of snow during our winter season. It would be an impossibility to keep these streets free from such obstructions. The true rule seems to us to be that unless ice or snow or sleet has been allowed to fall in such quantities as are unusual and to remain unremoved for a longer period than was necessary, or could not have been removed at a greater expense than could reasonably be incurred, that the municipality would not be liable.

Again, his Honor was requested to instruct the jury: "6. If you find as a fact in this case that the ice which formed on the sidewalk and caused the plaintiff's injury came from a hydrant situated on private property, and which the city of Asheville did not control, then the defendant would not be liable, and you will answer the first issue 'No.' " He gave the instruction, but added: "But if you find the hydrant was located on private property and the city had control of the same, and the city was negligent in allowing water to escape and accumulate and form ice on the street, and by reason of this the plaintiff fell and was injured, then the city would be negligent, and you should answer the first issue 'Yes.' " That instruction was erroneous, and for the same reason that

it was the province of the jury to find the facts about the accumulation of the ice and that of his Honor to instruct them as a matter of law upon those facts, whether the defendant was negligent or not; and for the further reason that under that instruction the formation of ice from the hydrant during the course of a night or a few hours was made as a matter of law negligence on the part of the city. It is but just to add that in his charge in chief his Honor instructed the jury pretty fully and in the main accurately on these questions. But where instructions are contradictory, and on serious phases of the case, a new trial must be granted for the reasons we have often pointed out, that we cannot tell which instruction the jury followed.

The defendant further requested the Court to instruct the jury that the plaintiff could not recover in this action because there was no evidence that she had given the Board of Aldermen the notice required in sections 96 and 97 of chapter 100, Private Laws of 1895 (the amended and consolidated charter of the city of Asheville): "Section 96. No action shall be instituted or maintained against said city upon any claim or demand whatsoever of any kind or character, until the claimant shall have first presented his or her claim or demand in writing to said Board of Aldermen and said board shall have declined to pay or settle the same as presented, or for ten days after such presentation neglected to enter or cause to be entered upon its minutes its determination in regard thereto; but nothing herein contained shall be construed to prevent any statute of limitation from commencing to run at the time such claim accrued or demand arose, or in any manner interfered with its running.

"Section 97. No action for damages against said city of any character whatever, to either person or property, shall be instituted against said city, unless within ninety days after the happening or infliction of the injury complained of, the

complainant, his executors or administrators, shall have given notice to the Board of Aldermen of said city of such injury in writing, stating in such notice the date and place of the happening or infliction of such injury, the manner of such infliction, the character of the injury and the amount of damages claimed therefor; but this shall not prevent any time of limitation prescribed by law from commencing to run at the date of the happening or infliction of such injury, or in any manner interfere with its running."

In the complaint as originally filed there was no allegation of notice to the defendant of the plaintiff's injury as required by the statute, but an amendment was made to the complaint in which notice was alleged, and the defendant made no answer to the amendment. The plaintiff contends that notwithstanding the requirements of sections 96 and 97 of the Act of 1895, proof of notice to the city by the plaintiff of her injury was not necessary, because of The Code rule that matters of fact alleged in the complaint, not denied in the answer, are to be taken as true. The defendant, however, contends that those sections of the Act of 1895 are in effect a bar to the plaintiff's right of action, unless she both alleges and proves by evidence that she gave to the defendant such notice as is required by law, and that the act is not a statute of limitations, but a bar to the plaintiff's action, unless it is shown on the trial that the notice was given. His Honor did not deem the failure on the part of the defendant to answer the amendment of the plaintiff as of sufficient consequence to allow the plaintiff to recover without proof of the notice required, and the plaintiff introduced three witnesses to show that the notice was given. That evidence was not even a scintilla going to show that the notice had been given by the plaintiff to the defendant as required by the statute.

Error.

DOUGLAS, J., dissents.