MRS. OPAL PICKETT, ADMINISTRATRIX OF W. L. G. PICKETT, DECEASED, *v.* CAROLINA AND NORTHWESTERN RAILWAY, TOWN OF NEWTON AND W. C. WILKINSON.

(Filed 6 May, 1931.)

**1. Municipal Corporations E c—City is liable for injury caused by dangerous condition of street of which it has actual or implied notice.**

A city is liable in damages to one whose personal injury or death is proximately caused by a dangerous condition of its streets of which the city had sufficient express or implied notice.

**2. Same—Evidence of implied knowledge of city of dangerous condition of street held sufficient.**

Where a dangerous place in the street of a city has existed for a sufficient length of time to have been known by the city in the exercise of due care in inspection, the city will be held to have implied knowledge thereof, and where there is evidence that a dangerous condition in the street of a city had existed for about four months, and that the superintendent of public works of the city, in the course of his duties, passed thereover several times a day, it is sufficient evidence of notice by the city of such dangerous condition.

**3. Same—City is not relieved of liability for dangerous condition of street by fact that Highway Commission had taken over construction.**

Where the State Highway Commission has taken over the construction of a street and bridge within the incorporated limits of a town, the town is not thereby relieved of liability for an injury proximately caused by a dangerous condition of the street at the bridge when the town has had implied notice of such condition which had existed for several months, C. S., 3846(j) providing that the State Highway Commission should assume full and exclusive responsibility for the maintenance of all roads forming a part of the State highway system expressly excepting from its provisions streets in towns and cities.

**4. Evidence D h—Evidence of other accident at place of injury held competent, the record disclosing that conditions were unchanged.**

In an action to recover damages caused by an accident at a dangerous place in a city street where the street was under construction it is competent to show that other accidents had occurred at the same place, the record disclosing that the conditions had remained unchanged.

CIVIL ACTION, before *Shaw, J.,* at July Term, 1930, of CATAWBA.

The evidence tended to show that the Carolina and Northwestern Railway crosses a public street in the town of Newton; that an overhead bridge had been erected over the tracks of the railway company, and that said bridge was within the corporate limits of said town. Some time prior to 26 December, the State Highway Commission, under and by virtue of chapter 2, Public Laws of 1921, C. S., 3846(a), *et seq.,* had taken over for the purpose of paving and constructing said street as a part of the State highway system. The street had been improved to within several feet of the bridge. The distance between the termination of the concrete road and the bridge was variously estimated from fifteen to forty feet. Therefore, traveling the concrete road approaching the bridge when within fifteen to forty feet of the bridge, there was a drop or declivity of about five feet; that is to say, the concrete street was four or five feet higher than the dirt space between the end of the concrete street and the bridge. This drop or declivity, according to the evidence, sloped gradually from the end of the concrete street. The bridge was situated at an angle. Some of the witnesses testified that the angle was about twenty-five degrees. In other words a traveler moving along the concrete street, when he arrived at the termination of the concrete, would be compelled to make a sharp turn to get on the bridge, and the testimony tended to show that if the street were projected in a straight line it would not hit the bridge at all. The Highway Commission had placed various signs upon the street approaching the bridge. These sign boards were labeled "Danger." "Weak bridge." "One-way bridge." Another sign read, "Dangerous bridge." "Railroad bridge, very dangerous." "Traffic may proceed at owner's risk." Lanterns were attached to the signs at the bridge to give further warning of danger. This condition had existed for a period of about four months prior to the time of plaintiff's death.

On 26 December, 1928, at about 6:45 p.m., W. L. G. Pickett, who lived at Rich Square, North Carolina, was traveling through the town of Newton in a Chevrolet truck loaded with opera chairs, which he was transporting from Hickory, North Carolina, to Rich Square, North Carolina. The evidence tended to show that the lights or lanterns upon the bridge were not lighted on this particular night and that said Pickett in attempting to cross said bridge struck the corner of the bridge, causing him to lose control of his truck, which ran a few feet upon the bridge, turned over and caught fire, resulting in his death. There was other evidence tending to show that the runners or planks running across the bridge were cupped up and in a defective condition.

Plaintiff alleged and offered evidence tending to show that the sharp curve, the sudden drop or declivity on the hard-surfaced street, the

absence of lights, and other defective approaches to the bridge, together with the fact that the bridge was placed at an angle to the street, produced a dangerous situation upon the street at the bridge. The town of Newton filed an answer alleging that the State Highway Commission was in control of said street and said bridge, and that the same was then under construction, and that, therefore, the town of Newton was charged with no responsibility for the maintenance and repair of said street and bridge.

At the conclusion of plaintiff's evidence the defendant railway company moved for judgment of nonsuit, and the motion was allowed by the court.

The town of Newton offered in evidence the complaint and decree in the case of Town of Newton v. State Highway Commission. The decree provided that the Highway Commission would take over and construct route No. 10 through the town of Newton.

The following issues were submitted to the jury:

1. "Was the death of plaintiff's intestate caused by reason of the negligence of the defendant, town of Newton, as alleged in the complaint?"

2. "If so, did plaintiff's intestate, by his own negligence, contribute to his death, as alleged in the answer?"

3. "What damages, if any, is the plaintiff entitled to recover?"

It does not appear how the issues were answered, but judgment was entered in favor of plaintiff and against the defendant, town of Newton, for the sum of $7,000, from which judgment the defendant town appealed.

*Wilson Warlick, W. B. Councill and W. A. Self for town of Newton.*
*R. O. Everett, Justice C. Rudisill and Jno. W. Hester for plaintiff.*

BROGDEN, J. When the State Highway Commission takes over a public street in an incorporated town for the purpose of constructing and maintaining same as a link in the State highway system, is such town thereby relieved from all liability for negligence to persons using said street?

As the State Highway Commission is a State agency it is not liable for negligence resulting in personal injury or death. *Carpenter v. R. R.,* 184 N. C., 400. Hence, if the town of Newton is not liable, then the motion for nonsuit as to it should have been granted.

A municipality owes certain specific and nondelegable duties to the public. These duties are summarized in *Willis v. New Bern,* 191 N. C., 507. There was ample evidence of the dangerous condition of the street at the bridge, and, upon the evidence, the bridge itself was a part of the highway. *R. R. v. McArtan,* 185 N. C., 201. In the *Willis case,*

*supra,* the Court said: "It is further established by the decisions referred to that a municipal corporation is not an insurer of the safety of its streets, nor is any duty imposed upon it to warrant that the condition of its streets shall at all times be absolutely safe. Neither will the breach of such duties imposed warrant a recovery by the mere showing that a defect existed and that an injury has resulted proximately therefrom. It must be further shown that the governing authorities of the municipality had notice of the defect. This essential notice arises from: (1) Actual notice or knowledge directly imparted to the proper officials of the municipality; (2) implied, constructive or imputed notice. The principle creating and governing, implied, constructive or imputed notice is thus stated in Shearman & Redfield on the Law of Negligence, 6 ed., Vol. 2, sec. 369: 'Unless some statute requires it, actual notice is not a necessary condition of corporate liability for defect which caused the injury. Under its duty or active vigilance, a municipal corporation is bound to know the condition of his highways, and for practical purposes, the opportunity of knowing must stand for actual knowledge. Hence, where observable defects in a highway have existed for a time so long that they ought to have been observed, notice of them is implied, and is imputed to those whose duty it is to repair them; in other words, they are presumed to have notice of such defects as they might have discovered by the exercise of reasonable diligence.' "

In the case at bar there was sufficient evidence of notice of the condition of said street. The superintendent of public works of defendant town testified that it was a part of his duty to keep the bridges of the town in proper repair and that in the course of his duties he passed over the bridge in controversy sometimes twice or three times a day.

Therefore, we have this situation: A portion of the street of the town was in a defective and dangerous condition, and the town had express notice thereof. Consequently, nothing else appearing, the town would be liable for all injuries received by travelers using said street proximately caused by such defects. But the defendant town, conceding the ordinary rule of law applicable to such a situation, contends that it is absolved from liability because of the fact that the Highway Commission had sole and exclusive control of said street at the time of the death of plaintiff's intestate. This contention, however, cannot be maintained.

The powers of the State Highway Commission, as originally created, are contained in chapter 2, Public Laws of 1921, and the amendments thereto. C. S., 3846, *et seq.* In section 10, subsection (g) of the Road Act of 1921, now subsection (g), C. S., 3846(j), it is provided that the State Highway Commission shall "assume full and exclusive responsibility for the maintenance of all roads other than streets in towns and cities, forming a part of the State highway system from date of acquir-

ing said roads." Obviously, the road act did not relieve municipalities from responsibility for dangerous conditions or defects existing in streets forming a part of the State highway system, certainly after notice. Hence, the trial judge ruled correctly in declining to enter judgment of nonsuit. *Michaux v. Rocky Mount,* 193 N. C., 550.

Exception was taken to certain evidence tending to show other accidents at this bridge prior to the time of the death of plaintiff's intestate. The record discloses that the conditions existing at the bridge had remained unchanged for several weeks. Hence, the evidence was competent. *Conrad v. Shuford,* 174 N. C., 719; *Perry v. Mfg. Co.,* 176 N. C., 68; *McCord v. Harrison-Wright Co.,* 198 N. C., 743.

Upon the whole record, it is the opinion of the Court that the case has been correctly tried.

No error.