JAMES RUSSELL MATTERNES, EXECUTOR OF THE ESTATE OF GWENDO-
LYN PORTER MATTERNES, DECEASED AND JAMES RUSSELL
MATTERNES AND REBECCA LYNN MATTERNES BY HER GUARD-
IAN AD LITEM D. BLAKE YOKLEY v. CITY OF WINSTON-SALEM

No. 74

(Filed 26 November 1974)

1. **Municipal Corporations § 14— injury to user of streets — duty of municipality**

    Liability of a city or town for damages for injuries sustained by a user of its streets, due to the defective condition of the street, arises only for a negligent breach of duty to exercise ordinary care to maintain streets in a condition reasonably safe for those who use them in a proper manner, and it is necessary for a complaining party to show more than the existence of a defect in the street and the injury.

2. **Municipal Corporations § 14— State highway within city limits — injury to user — liability of municipality**

    Apart from defendant city's contract with the State Board of Transportation, the city has no responsibility for the maintenance or the condition of a bridge which is a part of the State highway system located within its boundaries and no liability to any person injured by reason of any defect in its condition, not due to an act of the city, or by reason of any failure to remove snow and ice therefrom.

1

Matternes v. City of Winston-Salem

3. **Municipal Corporations §§ 14, 22— contract with State Board of Transportation for maintenance of State highway — status of highway unchanged**

A contract between defendant city and the State Board of Transportation which provides for performance by the city of work which, apart from the contract, the Board would be under a duty to perform, and which provides that the work is to be performed by the city in accordance with the requirements of the Board and under the general administrative control of its engineer, but which does not provide for the liability of either party for injury or damage to users of the highway caused by defects therein or the accumulation of snow, ice or other substance thereon does not change the status of the street from one which is a part of the State highway system to one which is a part of the city system, and the status of the city under the contract is that of an employee of, or independent contractor with, the Board of Transportation.

4. **Contracts § 14— incidental beneficiary — no right to maintain action for breach**

Though the general rule is that one who is not a party to a contract may not maintain an action for its breach, there is an exception to that rule which permits such action to be maintained by a third party who is a beneficiary of the contract; however, a mere incidental beneficiary of the contract acquires by virtue of the promise no right against the promisor or the promisee.

5. **Contracts § 14— incidental beneficiary — intent of parties controlling**

The intention of the parties to the contract determines whether the plaintiff is a mere incidental beneficiary thereof.

6. **Contracts § 14; Municipal Corporations § 16— contract for maintenance of highway — plaintiff as incidental beneficiary**

The intention of defendant city and the State Board of Transportation in making a contract was none other than to provide the most convenient and economical method for doing necessary maintenance work on a highway which is a part of the State highway system located within the city, and the only beneficiaries contemplated were the parties to the contract themselves; consequently, while all travelers upon the highway would derive benefit from its being maintained in good condition, such benefit is incidental to the real purpose of the contract and is not of such a nature as to entitle one injured by the breach of the contract to sue for damages.

Chief Justice BOBBITT not sitting.

Justice HIGGINS concurs in result.

Justice SHARP concurring.

Justice HUSKINS dissenting.

APPEAL by plaintiffs from *McConnell, J.,* at the 13 May 1974 Session of FORSYTH, heard prior to determination by the Court of Appeals.

Matternes v. City of Winston-Salem

These are three actions for damages for wrongful death, personal injuries to a minor, and property damage and medical expenses incurred and to be incurred by the father of the minor child, all arising out of a one-car automobile accident on a bridge on Interstate Highway No. 40 in the City of Winston-Salem. The three complaints and the answers thereto are identical insofar as the basis of alleged liability is concerned.

The plaintiffs allege that a few minutes after 12 o'clock noon on Sunday, 7 January 1973, the deceased and her ten-year-old daughter, after attending church services in the City of Winston-Salem, were returning to their home. As they drove westwardly on Interstate Highway No. 40, they came to an overpass, known as the Hawthorne Bridge, on which there was an accumulation of snow and ice. There was a sharp curve on the bridge itself. The automobile driven by the deceased went out of control, struck the side rail of the bridge, knocked off one rail, went over the remaining rail and fell to the street below the bridge, causing injuries to the deceased, from which she died shortly thereafter, injuries to the minor child and damage to the vehicle.

The plaintiffs allege that the accident and resulting injuries were proximately caused by negligent inaction of the city, as set forth below, and that this was a breach of the city's contract with the State Highway Commission (now the Board of Transportation), of which contract the plaintiffs were third party beneficiaries. They allege that by this contract the city "assumed liability for the maintenance, upkeep and repair of certain roads, highways, streets and bridges, including the Hawthorne Bridge portion of Interstate 40, including interstate highways located within the boundaries of the City of Winston-Salem, North Carolina." They allege that the city broke the said contract and was negligent in the following respects (summarized) :

(1) The city failed to repair the surface of Hawthorne Bridge so that it would not have in it holes, cracks, slick and rough places;

(2) The city failed to take any actions or precautions to provide for repairs on the bridge in order to correct defects existing in the pavement, which were known or should have been known by the city;

(3) The city failed on the morning of 7 January 1973 to take any action whatsoever to "reduce the dangers created by the preexisting conditions and atmospheric conditions on that date" and failed to place any sand, salt or other material on the bridge;

(4) The city took no action to reenforce or correct inadequate guard rails of the bridge;

(5) The city failed to remove rocks, pieces of pavement and other debris from the bridge which had been present on the roadway for several days and the presence of which thereon was or should have been known by the city;

(6) The city failed to correct the conditions which existed on the roadway, many of which had existed thereon for weeks and all of which had existed thereon for many hours prior to the accident, the atmospheric conditions prevailing on the morning of the accident having been predicted on the day prior thereto, and that the "City took no precautions on the morning of January 7, 1973, to correct or reduce the hazards" then and there existing;

(7). The city failed "to have any plan of action or appropriate measures to maintain, properly repair and keep the roads which was its responsibility * * * had no plans or measures to correct or reduce the hazard which existed on Hawthorne Road Bridge in such atmospheric conditions, and * * * failed * * * to follow any and all appropriate standards which apply to municipal corporations engaged in such responsibility";

(8) The city failed to have adequate personnel, equipment and procedures to deal with many of the conditions set out in the complaint;

(9) The city failed adequately to warn the deceased of the conditions alleged in the complaint;

(10) The said conditions then and there existing constituted an "ultrahazardous condition and nuisance."

The plaintiffs further alleged that the city, "in the exercise of the obligations herein described, used certain vehicles for which it had purchased liability insurance, and * * * on account of the use of vehicles, purchase of insurance and the failure in said responsibility the defendant expressly waived any alleged immunity for said acts, omissions and conditions."

They also allege that the city received (from the State Highway Commission) money for the performance of its responsibilities under the said contract and so "was acting in a non-governmental and proprietary capacity and waived any immunity at the time and place complained of."

The city, in its answers, asserts the following defenses (summarized):

(1) The complaint fails to state a claim against the defendant upon which relief can be granted;

(2) Notwithstanding the contract between the city and the State Highway Commission, the State had the sole responsibility for the maintenance of the bridge. The plaintiffs are not third party beneficiaries of the contract and the city was not negligent in any respect alleged in the complaint.

(3) The city had nothing to do with and no liability on account of the location, design or construction of the Hawthorne Bridge.

(4) The death, injuries to the minor child and damage to the automobile resulted from the negligence of the deceased driver in respects set forth in detail in the answers;

(5) The alleged negligent acts or omissions resulted from the discharge of "a governmental or legislative function of the State Highway Commission in that the negligence charged in the Complaint is based solely upon a defect or negligence in the construction and upkeep of Hawthorne Bridge on Interstate 40, a State highway system street, and thus any work on the part of the City in assisting the State to fulfill this responsibility would constitute the carrying out of a governmental function for the State for which there could be no liability on the part of the State or City."

(6) The death, injury to the minor child and damage to the vehicle resulted from "an unavoidable accident and * * * an act of God for which the City of Winston-Salem cannot be held liable."

In each case, the city moved for summary judgment "on the grounds that the alleged acts of negligence, even if they occurred (which is denied), were the sole responsibility of the State of North Carolina and not the City of Winston-Salem; and, therefore, there is no genuine issue as to any material fact

and the defendant City of Winston-Salem is entitled to Judgment as a matter of law."

In each case, the court allowed the motion for summary judgment and dismissed the action, finding and concluding that:

> "As to the question presented by the Motion for Summary Judgment the record shows there is no genuine issue as to any material fact on the question of whether any alleged acts of negligence and any other claims for relief, even if they occurred (which is denied by defendant and which alleged negligence and other claims for relief are not determined by this judgment) were the sole responsibility of the State of North Carolina and not the City of Winston-Salem, and the City of Winston-Salem cannot be held liable for said acts of negligence and any other claims for relief, and that the defendant is entitled to judgment as a matter of law."

From these judgments, the plaintiffs appeal.

The above mentioned contract between the State Highway Commission and the city contained the following provisions material to this litigation:

> "1. The Municipality shall provide for the routine maintenance, upkeep and repair of the State Highway System streets within the Municipality in accordance with the requirements of the Commission under the general administrative control of the Commission's Division Engineer. * * *
>
> "3. The Division Engineer shall notify the Municipality in writing at the beginning of each fiscal year * * * of the amount of money estimated to be available to the Municipality for the maintenance and repair of the State Highway System streets within the Municipality. * * *
>
> "4. If the Municipality desires to subcontract a particular job * * * the Municipality shall forward the plans, specifications, proposals and other bid documents * * * to said Division Engineer FOR APPROVAL PRIOR TO ADVERTISING FOR BIDS. Further, the Municipality shall submit the tabulation of bids to said Division Engineer, who upon recommending the award of the contract, shall forward the

Matternes v. City of Winston-Salem

information to the Commission in Raleigh, North Carolina, * * * for the concurrence in the Municipality's award of bids to the lowest qualified bidder.

*    *    *    *

"6. The Municipality shall submit to the Commission a quarterly invoice in the form approved by the State Highway Commission, for work completed under the terms of this Agreement. The Commission shall reimburse the Municipality within thirty (30) days after receipt of the invoice for the costs incurred in furnishing personnel, labor, equipment, and materials for the work performed."

An affidavit by John H. Davis, Chief Engineer for the State Highway Commission (now the North Carolina Department of Transportation, Division of Highways), stated that the Commission adopted a set of policies dealing with such contracts, which policies provided:

"The State Highway System streets and highways, at all times, are the responsibility of the State Highway Commission, and this overall responsibility is not shifted to the municipality by reason of their [sic] assumption, under reimbursable contract, of maintenance, construction, or improvement on behalf of the State Highway Commission as outlined in G.S. 136-66.1."

The deposition of Joe H. Berrier, Director of Public Works for the city, stated that the Hawthorne Bridge and curve were designed and constructed by contractors under contract with the State Highway Commission and the Commission determined what kind of surfacing and safety devices, including the guard rail, the bridge would have.

The plaintiffs' answers to interrogatories submitted by the defendant indicated that the plaintiffs would produce witnesses who would testify that snow began falling throughout the Winston-Salem and surrounding area about 9:30 a.m. on 7 January, that at the time of the accident there was an accumulation of snow at the Hawthorne Bridge and that there were defects in the surface of the bridge on the day prior to the accident and approximately one week later.

*William G. Pfefferkorn, Charles O. Peed, and M. Beirne Minor for plaintiffs.*

*Womble, Carlyle, Sandridge & Rice by W. F. Womble, Allan R. Gitter, and Roddey F. Ligon, Jr., for defendant.*

LAKE, Justice.

Upon this appeal, we do not reach the question of whether the city was negligent or otherwise broke its contract with the Board of Transportation, formerly called the State Highway Commission. The trial court granted summary judgment for the city on the ground that if the city, having so contracted with the Board of Transportation, failed in all of the respects alleged in the complaints, the plaintiffs have no cause of action against the city for the death, personal injuries and damages resulting from any or all of such failures.

[1] The liability of a city or town for damages for injuries sustained by a user of its streets, due to the defective condition of the street, nothing else appearing, was thus stated by Justice Parker, later Chief Justice, speaking for this Court in *Smith v. Hickory*, 252 N.C. 316, 113 S.E. 2d 557:

> "The governing authorities of a town or city have the duty imposed upon them by law of exercising ordinary care to maintain its streets and sidewalks in a condition reasonably safe for those who use them in a proper manner. Liability arises only for a negligent breach of duty, and for this reason it is necessary for a complaining party to show more than the existence of a defect in the street or sidewalk and the injury * * *."

To the same effect, see: *Waters v. Roanoke Rapids*, 270 N.C. 43, 153 S.E. 2d 783; *Mosseller v. Asheville*, 267 N.C. 104, 147 S.E. 2d 558; *Faw v. North Wilkesboro*, 253 N.C. 406, 117 S.E. 2d 14; *Gettys v. Marion*, 218 N.C. 266, 10 S.E. 2d 799; *Bailey v. Winston*, 157 N.C. 252, 72 S.E. 966; *Fitzgerald v. Concord*, 140 N.C. 110, 52 S.E. 309; *Bunch v. Edenton*, 90 N.C. 431.

By virtue of applicable statutes, a different rule applies, nothing else appearing, when the street on which the injury occurred is a part of the State highway system. G.S. 160A-297 (a) provides:

> "*Streets under authority of Board of Transportation.*— (a) A city shall not be responsible for maintaining streets or bridges under the authority and control of the Board of Transportation, *and shall not be liable for injuries to persons or property resulting from any failure to do so.*" (Emphasis added.)

G.S. 136-45 provides:

*"General purpose of law: control, repair and main-
tenance of highways.*—The general purpose of the laws
creating the Board of Transportation is that said Board of
Transportation shall take over, establish, construct, and
maintain a statewide system of hard-surfaced and other de-
pendable highways * * * and for the further purpose of
permitting the State to assume control of the State high-
ways, repair, construct, and reconstruct and maintain said
highways at the expense of the entire State, and to relieve
the counties and cities and towns of the State of this bur-
den."

G.S. 136-47 provides:

*"Routes and maps; objections; changes.*—The designa-
tion of all roads comprising the State highway system as
proposed by the Board of Transportation shall be mapped,
and * * * the * * * street-governing body of each city or
town in the State shall be notified of the routes that are
to be selected and made a part of the State system of high-
ways; and if no objection or protest is made by the * * *
street-governing body of any city or town in the State
within 60 days after the notification before mentioned,
then and in that case the said roads or streets, to which
no objections are made, shall be and constitute links or parts
of the State highway system * * *."

G.S. 136-66.1 provides:

*"Responsibility for streets inside municipalities.*—Re-
sponsibility for streets and highways inside the corporate
limits of municipalities is hereby defined as follows:

(1) The State Highway System.—The State highway
system inside the corporate limits of municipalities
shall consist of a system of major streets and highways
necessary to move volumes of traffic efficiently and
effectively from points beyond the corporate limits of
the municipalities through the municipalities and to
major business, industrial, governmental and institu-
tional destinations located inside the municipalities.
The Board of Transportation shall be responsible for
the maintenance, repair, improvement, widening, con-
struction and reconstruction of this system. * * *

(2) The Municipal Street System.—In each municipality the municipal street system shall consist of those streets and highways accepted by the municipality which are not a part of the State highway system. The municipality shall be responsible for the maintenance, construction, reconstruction, and right-of-way acquisition for this system.

(3) Maintenance of State Highway System by Municipalities.—Any city or town, by written contract with the Board of Transportation, may undertake to maintain, repair, improve, construct, reconstruct or widen those streets within municipal limits which form a part of the State highway system. * * * All work to be performed by the city or town under such contract or contracts shall be in accordance with Board of Transportation standards, and the consideration to be paid by the Board of Transportation to the city or town for such work, whether in money or in services, shall be adequate to reimburse the city or town for all costs and expenses, direct or indirect, incurred by it in the performance of such work * * *."

G.S. 136-41.3 provides:

*"Use of funds; records and annual statement; excess accumulation of funds; contracts for maintenance, etc., of streets.*—* * * The Board of Transportation within its discretion is hereby authorized to enter into contracts with municipalities for the purpose of maintenance, repair, construction, reconstruction, widening or improving streets of municipalities. And the Board of Transportation in its discretion may contract with any city or town which it deems qualified and equipped so to do that the city or town shall do the work of maintaining, repairing, improving, constructing, reconstructing, or widening such of its streets as form a part of the State highway system * * *."

[2] Interstate Highway No. 40, including the Hawthorne Bridge, is part of the State highway system over which the Board of Transportation had and has authority. It is clear that, under the foregoing statutes, apart from its contract with the Board of Transportation, the city has no responsibility for the maintenance or the condition of the Hawthorne Bridge and no liability to any person injured by reason of any defect in its

condition, not due to an act of the city, or by reason of any failure to remove snow and ice therefrom. In our opinion, it is equally clear that the above quoted provisions of G.S. 160A-297(a) are intended to apply where there is no such contract and do not, per se, absolve a city from liability for injury, if any, imposed upon it by such contract. Consequently, the matters alleged in the complaints, assuming the allegations to be true, do not give to the plaintiffs a right of action against the city for the death of Mrs. Matternes, the injuries sustained by her daughter or the damage to the automobile and the medical expenses incurred by the father of the child, unless liability for these arises out of the contract between the city and the Board of Transportation.

[3]. The material portions of the contract are quoted above. It does not contain any specific provision as to the liability of either party thereto for injury or damage to users of the highway caused by defects therein or the accumulation of snow, ice or other substance thereon. It provides for the performance by the municipality of work, which, apart from the contract, the Board of Transportation would be under a duty to perform, and for the compensation to be paid to the city for such work. It provides that the work is to be performed by the city in accordance with the requirements of the Board of Transportation and under the general administrative control of its engineer. Such contract does not change the status of the street from one which is a part of the State highway system to one which is part of the city system, and so bring it within the general rule, above quoted, concerning a city's duty to travelers upon its streets. See, *Taylor v. Hertford,* 253 N.C. 541, 117 S.E. 2d 469. The status of the city under this contract is that of an employee of, or independent contractor with, the Board of Transportation.

It is to be observed that the plaintiffs do not complain of any act of the city which created, or increased the hazard of, any condition upon the Hawthorne Bridge or upon the highway of which it is a part. The question of a city's liability for so doing, with or without a contract with the Board of Transportation, is not before us. The complaint is that the city did nothing; that is, that the city broke its contract with the Board of Transportation by failing to correct or to remove a dangerous condition not the result of any act of the city. The liability of the city to the Board of Transportation for such breach of the contract is not before us.

[6]   The question upon this appeal is, Can an individual user of a street, which is part of the State highway system, who sustains personal injuries or property damage as the result of a dangerous condition of such street, maintain an action for damages against a city which contracted with the Board of Transportation to repair or remove such condition and then did nothing whatsoever about it? The answer is, No.

[4]   The general rule is that one who is not a party to a contract may not maintain an action for its breach. The plaintiffs contend that they fall within the well recognized exception to the general rule which permits such an action to be maintained by a third party who is a beneficiary of the contract. The scope and effect of the third party beneficiary rule was clearly stated by Justice Huskins, speaking for this Court in *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc.,* 277 N.C. 119, 177 S.E. 2d 273. There, we held that a summary judgment for the defendant should have been entered in a suit for breach of a construction contract, for the reason that the plaintiff was a mere incidental beneficiary of the contract and, as such, could not maintain an action for its breach. We said:

> "The American Law Institute's Restatement of Contracts provides a convenient framework for analysis. Third party beneficiaries are divided into three groups: *donee* beneficiaries, where it appears that the 'purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary'; *creditor* beneficiaries, where 'no purpose to make a gift appears' and 'performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary'; and *incidental* beneficiaries, where the facts do not appear to support inclusion in either of the above categories. Restatement of Contracts § 133 (1932). While duties owed to donee beneficiaries and creditor beneficiaries are enforceable by them, Restatement of Contracts §§ 135, 136, a promise of incidental benefit does not have the same effect. 'An incidenal beneficiary acquires by virtue of the promise no right against the promisor or the promisee.' Restatement of Contracts § 147.

> \*   \*   \*   \*

> "Restatement § 133 correctly states the law of this State and we therefore expressly approve the Restatement formula."

To the same effect, see: Williston on Contracts, 3rd Ed., §§ 356, 402; Corbin on Contracts, §§ 776, 782; 17 AM. JUR. 2d, Contracts, §§ 305, 307.

[5] The intention of the parties to the contract determines whether the plaintiff is a mere incidental beneficiary thereof. *Vogel v. Supply Co.* and *Supply Co. v. Developers, Inc., supra;* 17 AM. JUR. 2d, Contracts, §§ 304, 305, 307. "A third person cannot maintain an action upon a simple contract merely because he would receive a benefit from its performance or because he is injured by the breach thereof." *Kelly v. Richards,* 95 Utah 560, 83 P. 2d 731, 129 A.L.R. 164.

In *Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896, it was held that an individual whose building is burned by reason of the inadequacy of water pressure at fire hydrants, in violation of the water company's contract with the city, cannot maintain an action against the company, a result contrary to that reached by this Court in *Gorrell v. Water Supply Co.,* 124 N.C. 328, 32 S.E. 720. Speaking through Chief Justice Cardozo, the New York Court of Appeals said:

> "In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary. * * * It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost. The field of obligation would be expanded beyond reasonable limits if less than this were to be demanded as a condition of liability. A promisor undertakes to supply fuel for heating a public building. He is not liable for breach of contract to a visitor who finds the building without fuel and thus contracts a cold. The list of illustrations can be indefinitely extended. The carrier of the mails under contract with the government is not answerable to the merchant who has lost the benefit of a bargain through negligent delay."

*Gorrell v. Water Co., supra,* decided by a closely divided court and recognized in the majority opinion therein as contrary to the great weight of authority from other jurisdictions, is dis-

tinguishable from the present case in that there the contract between the city and the water supply company granted to the company a franchise to carry on within the city a public utility business. One accepting and operating under such a franchise assumes duties and incurs obligations more extensive than those incurred by the promisor in an ordinary contract. See: *Hayes v. Michigan Central R. R.*, 111 U.S. 228, 4 S.Ct. 369, 28 L.Ed. 410; Annot., 38 A.L.R. 403, 504, 536.

Also distinguishable from the present case are decisions holding that one injured by a defect in a city street may maintain an action against a street railroad company which contracted with the city to keep that portion of the street in repair. See: *Fowler v. Chicago Railways*, 285 Ill. 196, 120 N.E. 635; *Phinney v. Boston Elevated Railway*, 201 Mass. 286, 87 N.E. 490. In such case, as above noted, the city-promisee is, itself, subject to suit for negligent failure to maintain the street in a reasonably safe condition. If recovery were had against it by the injured party, the city could sue its promisor to recoup its loss. Thus the suit by the injured party against the promisor avoids needless circuity of action, the contract falls into the creditor-beneficiary classification and, under the rule of *Lawrence v. Fox*, 20 N.Y. 268, the action by the injured party may be maintained. In the present case, on the contrary, the injured party could not proceed against the State for the failure of the Board of Transportation to remove a dangerous condition not caused by any act of the Board.

The Restatement of Contracts § 145 states:

"A promisor bound to the United States or to a State or municipality by contract to do an act or render a service to some or all of the members of the public, is subject to no duty under the contract to such members to give compensation for the injurious consequences of performing or attempting to perform it, or of failing to do so, unless,

(a) an intention is manifested in the contract, as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, or

(b) the promisor's contract is with a municipality to render services the non-performance of which

would subject the municipality to a duty to pay damages to those injured thereby."

The above quoted "policy" adopted by the State Highway Commission, predecessor to the Board of Transportation, shows it was not the purpose of this contract to shift to the city the ultimate responsibility for maintaining this bridge.

[6] We think it clearly appears that the intention of the parties in making this contract was none other than to provide the most convenient and economical method for doing the necessary maintenance work on the highway and that the only beneficiaries contemplated were the parties to the contract themselves. Consequently, while all travelers upon Highway I-40 would derive benefit from its being maintained in good condition, such benefit is incidental to the real purpose of the contract and is not of such a nature as to entitle one injured by the breach of the contract to sue for damages.

The cases upon which the plaintiffs place their chief reliance are distinguishable. *Hotels, Inc. v. Raleigh,* 268 N.C. 535, 151 S.E. 2d 35, differs from the present case in that there, as appears more clearly in the opinion upon rehearing, 271 N.C. 224, 155 S.E. 2d 543, the complaint alleged the city had adopted the stream which overflowed as a part of its storm sewer drainage system and also alleged affirmative acts of negligence by the city, which created an obstruction of the stream and caused the overflow from which the injury to the plaintiff resulted. In *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551, the defendant, a contractor with the State Highway and Public Works Commission, was sued for damages from personal injury alleged to have been proximately caused by the defendant's negligence "in pursuing an affirmative course of conduct, i.e., paving a highway." There, as the Court expressly stated, the right of the plaintiff to sue the defendant for breach of the defendant's contract with the State Highway and Public Works Commission was not before the Court. *Pickett v. Railroad,* 200 N.C. 750, 158 S.E. 398, is distinguishable from the present case in that, at the time of that decision, there was no statute in existence comparable to G.S. 160A-297(a).

Assuming that the plaintiffs would be able to establish by evidence each of the alleged failures of the city to perform its contract with the Board of Transportation, the plaintiffs would not thereby establish a cause of action against the city. Con-

sequently, there was no error in the allowance of the defendant's motion for summary judgment.

Affirmed.

Chief Justice BOBBITT not sitting.

Justice HIGGINS concurs in result.

Justice SHARP concurring:

I concur in the majority opinion upon the following premise: Under the applicable statutes, the City's agreement to maintain State Highway system streets within the City in accordance with the Board's requirement and under the control of its division engineer made the City the Board's employee. The contract, specifically authorized by statute, did not transfer to the City the responsibility for the maintenance, repair, and upkeep of the streets, which G.S. 136-66.1 imposed upon the Board. Nor did it recreate in the City the liability from which G.S. 160A-297(a) specifically absolves it for injuries to persons and property resulting from defects in city streets under the Board's authority. Had the legislature intended the Board's contract with the City for street maintenance to reimpose liability on the City for injuries resulting from defects in State Highway system streets, it seems that it would have so provided. In my view, neither the City's total immunity nor the Board's liability under the Tort Claims Act was affected by the contract. Summary judgment for the defendant was, therefore, properly allowed.

From that portion of the majority opinion which discusses the rights of third party beneficiaries to a contract to maintain an action for its breach, I must disassociate myself. I do not agree that members of the traveling public are merely "incidental beneficiaries" of the contract which defendant City made with the Board. Further, it is not my intention to overrule or question Gorrell v. Water Supply Co., 124 N.C. 328, 32 S.E. 720 (1899). I adhere to the rule of law enunciated in that case, which is deeply embedded in our jurisprudence.

Justice HUSKINS dissenting.

The majority appears to be persuaded that the complaint alleges the City failed to correct or remove a dangerous condi-

tion, as opposed to alleging *affirmative acts* of negligence. Reasoning that the plaintiff could not proceed against the State under the Tort Claims Act for failure of the Board of Transportation to remove a dangerous condition, the Court holds that the plaintiff could not proceed against the City which was under contract with the Board of Transportation to remove such a condition. I respectfully dissent from that view.

Prior to the Tort Claims Act, the doctrine of governmental immunity prevented suits against the State on public policy grounds. Prosser, Law of Torts § 131 (1971); Davis, Tort Liability of Governmental Units, 40 Minn. L. Rev. 751 (1956). The North Carolina Tort Claims Act, G.S. § 143-291, following the trend in other states partially abrogating the doctrine of governmental immunity, abolishes the doctrine in those claims against the State in which a State officer, employee, involuntary servant or agent has committed a negligent *act* while acting within the scope of his office, employment or agency. *See* Comment, Tort Claims Against the State, 29 N.C.L. Rev. 416 (1951). However, the doctrine is retained when a negligent omission has occurred. *See Flynn v. State Highway Commission*, 244 N.C. 617, 94 S.E. 2d 571 (1956); Byrd, Recent Developments in North Carolina Tort Law, 48 N.C.L. Rev. 791 (1970). The State is not liable in cases of negligent omissions because the doctrine of State immunity still applies to omissions to act even though it is a negligent omission. The majority now extends this immunity to an "employee" or "independent contractor" under contract with the State when sued for negligent omissions arising out of the performance of that contract.

While a contractor with the State should and does come under the umbrella of the State's immunity when it has merely performed the contract, such contractor should be liable for its own negligence in performing the contract. *Givens v. Sellars*, 273 N.C. 44, 159 S.E. 2d 530 (1968); *Highway Commission v. Reynolds Co.*, 272 N.C. 618, 159 S.E. 2d 198 (1968); Prosser, Law of Torts § 131 (1971). In measuring such negligence, the standard should be that of *reasonable care* by a contractor.

The majority correctly states the rule that the City is under a duty to use due care to keep *its own* streets and sidewalks in reasonably safe condition for ordinary use. *Mosseller v. Asheville*, 267 N.C. 104, 147 S.E. 2d 558 (1966); *Hunt v. High Point*, 226 N.C. 74, 36 S.E. 2d 694 (1946); *see also* G.S. § 160A-296. The due care standard applies to all highway maintenance

whether the highway is under State or local government control. It is well settled in this jurisdiction that negligence may consist of an act or omission. *Flynn v. Highway Commission, supra;* Note, Tort Claims Act—Distinction Between Nonfeasance and Misfeasance, 36 N.C.L. Rev. 352 (1958), and cases cited therein. Accordingly, the City would be negligent under certain circumstances for the failure to remove snow and ice from its streets and sidewalks. *Browder v. Winston-Salem,* 231 N.C. 400, 57 S.E. 2d 318 (1950); *Love v. Asheville,* 210 N.C. 476, 187 S.E. 562 (1936); *Hartsell v. Asheville,* 164 N.C. 193, 80 S.E. 226 (1913); *Cresler v. Asheville,* 134 N.C. 311, 46 S.E. 738 (1904); *see* Annotation, Duty of Towns and Townships as to Snow and Ice in Highways, 27 A.L.R. 1104 (1923); Ferrell, City Liability of North Carolina Cities and Towns for Personal Injuries and Property Damage Arising From the Construction, Maintenance, and Repair of Public Streets, 7 Wake Forest L. Rev. 143 (1971). Under this same standard the Board of Transportation would be negligent if it unreasonably failed to remove snow and ice from State streets and roads. However, no liability devolves upon the State and its Board of Transportation for such negligence because of immunity from liability for negligent omissions under the Tort Claims Act. The City has no such immunity in this situation—either under the common law, the statutes relied upon by the majority, or under the contract between the City and the Board of Transportation. If the City is to escape liability, its nonliability should be based upon a finding of no negligence under the circumstances, and not upon a legal theory that the City is immune from liability for negligent omissions.

The evidence on the affidavits establishes that the City voluntarily undertook the contractual duty to maintain State roads within the City limits of Winston-Salem. The State and traveling public relied, and had a right to rely, upon the City's promise to fulfill that obligation. The established rule followed by this Court is that an action in tort, founded upon a breach of contract, can be maintained by one not a party or privy to a contract when the act complained of is imminently dangerous to the lives and property of others. *Jones v. Elevator Co.,* 231 N.C. 285, 56 S.E. 2d 684 (1949). Such an action is not based upon the breach of the contract, but on the alleged negligence committed in its breach, which negligence constitutes a breach of duty imposed *by law. Jones v. Elevator Co., supra.* The rule was

Matternes v. City of Winston-Salem

articulated by Justice Sharp, speaking for this Court in *Toone v. Adams,* 262 N.C. 403, 137 S.E. 2d 132 (1964), as follows:

> " . . . The parties to a contract impose upon themselves the obligation to perform it; the law imposes upon each of them the obligation to perform it with ordinary care and they may not substitute a contractual standard for this obligation. A failure to perform a contractual obligation is never a tort unless such nonperformance is also the omission of a legal duty. . . . The contract merely furnishes the occasion, or creates the relationship which furnishes the occasion, for the tort. . . .
>
> \* \* \* \*
>
> The law imposes upon every person who enters upon an active course of conduct the positive duty to use ordinary care to protect others from harm and a violation of that duty is negligence. It is immaterial whether the person acts in his own behalf or under contract with another. . . . " (citations omitted.)

*See also,* A.L.I., Restatement (Second) of Contracts § 145, Comment b (Rev. Ed. Tentative Drafts 1973) ; 2 A.L.I., Restatement (Second) of Torts § 324A (1965) ; 2 A.L.I., Restatement (Second) of Agency § 354 (1958).

The *legal duty* imposed upon a highway contractor with the Board of Transportation (formerly the State Highway and Public Works Commission) was stated by this Court in *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551 (1951), as follows:

> "When the defendant undertook to perform the promised work under his contract with the State Highway and Public Works Commission, the positive legal duty devolved upon him to exercise *ordinary care* for the safety of the general public traveling over the road on which he was working. . . . " (Citations omitted.) (Emphasis added.)

As previously stated, ordinary care would encompass a duty to exercise reasonable diligence in removing ice and snow from the streets and in correcting other dangerous conditions.

The majority distinguishes *Council v. Dickerson's, Inc.* on the ground that the contractor therein was engaged in the affirmative course of conduct of "paving a highway." In my

view, undertaking to maintain State streets within the city limits is no less an "affirmative course of conduct" than "paving a highway." Here, the City, pursuant to the contract with the Board of Transportation, had engaged in the maintenance of State roads in Winston-Salem prior to the day of decedent's accident. On that day the City had an employee surveying the streets to determine whether snow and ice accumulation necessitated removal operations. It had work crews on duty at that time, and the crews actually engaged in snow and ice removal operations later that day. To say that this is nonfeasance is an unduly restrictive application of that doctrine. In *Flynn v. Highway Commission*, 244 N.C. 617, 94 S.E. 2d 571 (1956), this Court held that negligence may consist of either an act or omission. In that case plaintiff charged that the State Highway Commission failed to repair a break or hole in the road surface. If the failure to fill the hole had been mere nonfeasance, there would have been *no negligence at all* and it would have been unnecessary for the Court to consider whether liability ensued under the Tort Claims Act.

The concept of nonfeasance means the complete nonperformance of a promise, *i.e.*, not doing the thing at all. Prosser, The Law of Torts § 92 (1971). In this case the promise was to maintain State streets within the City limits. Repairing holes and removing ice, snow and debris were merely some of the obligations necessary to fulfill the promise.

The majority determines that the City had no duty or liability to the motoring public under the contract. This allows the City to contract to maintain State roads for a consideration, and then do nothing, collect the consideration, and incur no liability. The Legislature never intended to authorize such an arrangement.

The City contracted to "provide routine maintenance, upkeep and repair of the State Highway System streets within the Municipality." The majority holds that members of the traveling public, who are injured by the breach of this contract, are mere *incidental beneficiaries* and cannot maintain an action for damages against the City based on the breach. This conclusion is based upon a finding that the only beneficiaries contemplated by the parties to the contract were the parties themselves since the sole purpose of the contract was to provide the most convenient and economical method for maintaining State roads within the City limits of Winston-Salem. I think the State main-

tains its public streets and highways for the benefit of public users. *See* 10 McQuillin, Municipal Corporations § 30.39 (3rd Ed. Rev. 1966). When the State enters a contract for maintenance of State roads, people who use the roads receive the benefit.

The majority, in effect, overrules a line of cases in this jurisdiction dealing with the right of a resident of a municipality to sue a water company under contract with the municipality to provide water when the resident has been injured by the company's breach of that contract. The reasoning in this line of cases, which I think applies to the present situation, was stated by this Court in *Gorrell v. Water Supply Co.,* 124 N.C. 328, 32 S.E. 720 (1899), as follows:

"It is true, the plaintiff is neither a party nor privy to the contract, but it is impossible to read the same without seeing that, in warp and woof, in thread and filling, the object is the comfort, ease and security from fire of the people, the citizens of Greensboro. This is alleged by the eleventh paragraph of the complaint, and is admitted by the demurrer. The benefit to the nominal contracting party, the city of Greensboro, as a corporation, is small in comparison, and, taken alone, would never have justified the grants, concessions, privileges, benefits and payments made to the water company. Upon the face of the contract the principal beneficiaries of the contract, in contemplation of both parties thereto, were the water company on the one hand and the individual citizens of Greensboro on the other. The citizens were to pay the taxes to fulfill the money consideration named, and furnishing the individual citizens with adequate supply of water and the protection of their property from fire was the largest duty assumed by the company. One not a party or privy to a contract, but who is a beneficiary thereof, is entitled to maintain an action for its breach. . . .

\*   \*   \*   \*

. . . 'The water company did not covenant to prevent occurrence of fires, nor that the quantity of water agreed to be furnished would be a certain and effectual protection against every fire, and consequently does not in any sense occupy the attitude of an insurer; but it did undertake to perform the plain and simple duty of keeping water up to

a designated height in the standpipe, and if it failed or refused to comply with that undertaking, and such breach was the proximate cause of destruction of the plaintiff's property, which involves issues of fact for determination by a jury, there exists no reason for its escape from answering in damages that would not equally avail in case of any other breach of contract.' "

This decision has been expressly sustained on at least two occasions and relied on as authority numerous times. *See, e.g., Potter v. Water Company,* 253 N.C. 112, 116 S.E. 2d 374 (1960) ; *Powell v. Water Co.,* 171 N.C. 290, 88 S.E. 426 (1916) ; *Morton v. Water Co.,* 168 N.C. 582, 84 S.E. 1019 (1915) ; *Jones v. Water Co.,* 135 N.C. 553, 47 S.E. 615 (1906). While repeated applications of a bad rule of law do not transform it into a good rule of law, I feel that the *Gorrell* rule is the better reasoned one even though followed by a minority of jurisdictions. *See* Corbin, Liability of Water Companies for Losses by Fire, 19 Yale L. J. 425 (1910) ; Seavey, Reliance Upon Gratuitous Promises or Other Conduct, 64 Harv. L. Rev. 913 (1951) ; Seavey, Mr. Justice Cardozo and the Law of Torts, 52 Harv. L. Rev. 372, 48 Yale L. J. 390, 39 Col. L. Rev. 20 (1939) ; Sunderland, The Liability of Water Companies for Fire Losses, 3 Mich. L. Rev. 442 (1905) ; Note, Torts—Liability of Water Company to Individuals For Failure to Furnish Water, 26 Temple L. Q. 214 (1953) ; Prosser, Law of Torts, § 93 (1971).

The majority adopts the reasoning of the New York Court of Appeals in *Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896 (1928), and distinguishes the *Gorrell* line of cases on grounds that those cases involved a franchise arrangement with the city, whereby the water company carried on a public utility business within the city. The theory is that a franchise imposes greater duties and obligations than an "ordinary contract."

The *Moch Company* case arose out of facts almost identical to those in *Gorrell.* The contract in that case could also be characterized as a franchise agreement. However, the majority adopts the reasoning of the New York Court as more appropriate for application to this case than the prior reasoning of this Court on the same issue. I disagree. I do not think a contract to supply water to a city imposes greater duties and obligations than a contract to maintain State roads within the same city.

It should be noted that the majority rule, followed by the New York Court, is based upon a fear of placing a catastrophic

burden on a defendant in the event a large portion of a city is lost due to fire and water pressure failure. Prosser, Law of Torts § 93 (1971). This policy was pointed out by the New York Court in *Moch Company* when it noted that "the field of obligation would be expanded beyond reasonable limits" by the contrary rule. This fear is unwarranted in the present situation. Cities have long been liable without catastrophic results for negligent acts and omissions when maintaining their own streets, and for negligent acts in maintaining State streets. Likewise, the State has been liable for many years under the Tort Claims Act for its negligent acts in maintaining State roadways and has not incurred any catastrophic burdens.

Finally, it is argued, and apparently assumed by the majority, that G.S. 160A-297 (a) absolves the City of liability for negligent omissions committed while maintaining State streets and bridges. That statute provides that a City is *not responsible* for maintaining State highways and *not liable* for damages arising from any failure to do so. This simply means that the City is not liable for failing to do that which it had no responsibility to do in the first place. However, once the City contracts with the State under G.S. 136-66.1 (3) and assumes the responsibility for maintaining State streets and bridges within its jurisdiction, it is then subject to the general principles of tort and contract law applicable to that responsibility.

The majority opinion correctly observes that the possible issues on this motion have been restricted by the parties and lower courts to the sole question of whether a City is liable for a negligent omission while maintaining State streets and highways. My opinion, based on the foregoing reasons, is that the City should be held liable for such an omission. Therefore, defendant's motion for summary judgment should have been denied.

Denial of the motion for summary judgment would not relieve plaintiff of the burden of showing that the City breached a legal duty, and that the alleged death and injury was caused by such breach. Plaintiff would still face the hazard of directed verdict at the close of his evidence if he failed to show negligence.

For these reasons I respectfully dissent.