STATE OF NORTH CAROLINA GASTON COUNTY ESTATE OF JEREMIAH JIGGETTS, BY AND THROUGH ITS CO-ADMINISTRATORS GRACE JIGGETTS AND RALPH JIGGETTS, Plaintiffs v. THE CITY OF GASTONIA, Defendant

No. COA97-389

(Filed 20 January 1998)

**1. Highways, Streets, and Roads § 55 (NCI4th)— intersection of State highway and city street—pedestrian struck by vehicle—no duty by city**

Since the intersection of a State highway and city street is a part of the State highway system, the city owed no duty to a pedestrian to maintain the intersection or to install traffic control devices or lower the speed limit at the intersection, and its failure to do so could not render the city liable for the death of a student who was struck by a vehicle while crossing the State highway at this intersection.

**2. Highways, Streets, and Roads § 55 (NCI4th)— pedestrian struck by vehicle—State highway in city—safety measures by city—not showing of duty by city**

Safety measures taken by a city after a student was struck by a vehicle at an intersection that was a part of the State highway system, including lowering the speed limit, painting crosswalks, and installing pedestrian heads and push buttons, did not demonstrate the city's control over the intersection so as to render it liable for the student's death because the city could not take such measures without the approval of the NCDOT, and those measures are only discretionary governmental functions.

**3. Highways, Streets, and Roads § 55 (NCI4th)— pedestrian stuck by vehicle—state highway in city—no showing of third-party beneficiary rights**

The estate of a student struck by a vehicle at an intersection in defendant city that was a part of the State highway system failed to forecast evidence of a claim as a third-party beneficiary of a purported contract between the city and the NCDOT for the city to maintain the intersection where there was no allegation of such a contract, and no contract was presented to the trial court.

Appeal by plaintiff from order entered 13 January 1997 by Judge Loto G. Caviness in Gaston County Superior Court. Heard in the Court of Appeals 20 November 1997.

ESTATE OF JIGGETTS v. CITY OF GASTONIA

[128 N.C. App. 410 (1998)]

*Nicholas Street Law Offices, by Edgar F. Bogle, for plaintiff appellants.*

*Stott, Hollowell, Palmer & Windham, L.L.P., by Martha Raymond Thompson, for defendant appellee.*

SMITH, Judge.

Grace and Ralph Jiggetts, co-administrators of the estate of Jeremiah Jiggetts (plaintiffs), instituted this action against the City of Gastonia, North Carolina (the City), seeking compensatory damages for the wrongful death of their son, Jeremiah Jiggetts. On the morning of 4 October 1994, Jeremiah was walking to school in a northerly direction along Lyon Street, a municipal street located in the City. As he crossed Hudson Boulevard, a North Carolina Department of Transportation State highway system street, he was struck and killed by a vehicle traveling east on Hudson Boulevard.

In the complaint, plaintiffs alleged that, because the intersection of Hudson Boulevard and Lyon Street was located near two sizable schools, the intersection contained a high volume of pedestrian traffic. Plaintiffs further alleged the City was negligent in that it failed to construct a crosswalk area in the intersection, failed to erect warning signs along Hudson Boulevard to notify drivers of the high volume of pedestrian traffic, failed to provide a crossing guard or electronic pedestrian crossing lights to aid pedestrians crossing the intersection, and failed to set, maintain and control a safe speed limit for the intersection. The City thereafter filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1), (2), (6) and (7) (1990 and Cum. Supp. 1996) for lack of jurisdiction over the subject matter and person, failure to state a claim upon which relief can be granted, and failure to join a necessary party. The trial court granted this motion.

[1] On appeal, plaintiffs first contend the trial court erred by granting defendant's motion to dismiss since Lyon Street is a municipal street under the jurisdiction and control of the City, and not part of the State highway system. Because the City owed plaintiffs a duty to maintain Lyon Street, plaintiffs argue the City should be held liable for negligence concerning any part of the street, including that part intersecting with Hudson Boulevard, a State highway system street. Thus, plaintiffs claim N.C. Gen. Stat. § 160A-297 (1994) does not exculpate the City from liability for Jeremiah's death.

We initially note that in ruling on defendant's motion to dismiss, the trial court considered exhibits and other material submitted by both parties. According to N.C. Gen Stat. § 1A-1, Rule 12(b),

> [i]f, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

We therefore treat the City's motion to dismiss as a motion for summary judgment. *See also Locus v. Fayetteville State University*, 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). "In ruling on the motion the court must consider the evidence in the light most favorable to the nonmovant, and the slightest doubt as to the facts entitles him to a trial." *Snipes v. Jackson*, 69 N.C. App. 64, 72, 316 S.E.2d 657, 661, *disc. review denied and appeal dismissed*, 312 N.C. 85, 321 S.E.2d 899 (1984).

To survive a motion for summary judgment, plaintiffs " 'must allege a *prima facie* case of negligence—defendant[] owed plaintiff[s] a duty of care, defendant['s] conduct breached that duty, the breach was the actual and proximate cause of plaintiff[s'] injury, and damages resulted from the injury.' " *Mizell v. K-Mart Corp.*, 103 N.C. App. 570, 573, 406 S.E.2d 310, 311 (1991) (quoting *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990)), *aff'd*, 331 N.C. 115, 413 S.E.2d 799 (1992). The issue presented in the instant case is whether the City owed a duty to plaintiffs to construct crosswalks, erect warning signs, provide crossing guards and pedestrian crossing lights, and set a lower speed limit at the intersection of Hudson Boulevard, a State highway system street, and Lyon Street, a municipal street.

N.C. Gen. Stat. § 136-45 (1993) sets forth the general purpose of the laws creating the North Carolina Department of Transportation (NCDOT) and recites that one of these purposes is to permit the State "to assume control of the State highways, repair, construct, and reconstruct and maintain said highways at the expense of the entire

State, and to relieve the counties and cities and towns of the State of this burden." Thus, according to N.C. Gen. Stat. § 136-66.1(1) (Cum. Supp. 1996):

> The State highway system inside the corporate limits of municipalities shall consist of a system of major streets and highways necessary to move volumes of traffic efficiently and effectively from points beyond the corporate limits of the municipalities through the municipalities and to major business, industrial, governmental and institutional destinations located inside the municipalities. The Department of Transportation shall be responsible for the maintenance, repair, improvement, widening, construction and reconstruction of this system.

In turn, N.C. Gen. Stat. § 160A-297(a) provides that "[a] city shall not be responsible for maintaining streets or bridges under the authority and control of the Board of Transportation, and shall not be liable for injuries to persons or property resulting from any failure to do so." Further, this Court has held that:

> [W]hen a city street becomes a part of the State highway system, the Board of Transportation is responsible for its maintenance thereafter which includes the control of all signs and structures within the right-of-way. Therefore, in the absence of any control over a state highway within its border, a municipality has no liability for injuries resulting from a dangerous condition of such street unless it created or increased such condition.

*Shapiro v. Toyota Motor Co. Ltd.*, 38 N.C. App. 658, 662, 248 S.E.2d 868, 870 (1978); *see also* N.C. Gen. Stat. § 136-30(a) (1993).

In the instant case, the record indicates that on 4 October 1994, the intersection of Hudson Boulevard and Lyon Street was part of the State highway system. The trial court, when ruling on the City's motion to dismiss, considered the affidavit of Donald K. Lowe, the City's Traffic Engineer. In his affidavit, Lowe identified Hudson Boulevard and its intersection with Lyon Street as State Road 1255, part of the State highway system. The trial court also considered a NCDOT map of Gaston County which showed Hudson Boulevard and each intersection crossing it as part of the State highway system. Since Hudson Boulevard and each intersection crossing it are part of the State highway system, the City owed no duty to plaintiffs to maintain Hudson Boulevard, install traffic control devices or lower the speed limit on any part of it, including its intersection with Lyon Street.

[2] Plaintiffs also argue that measures taken by the City after Jeremiah's death to increase the safety of the intersection, including lowering the speed limit, painting crosswalks, and installing pedestrian heads and push buttons, demonstrate the City's control over the intersection. Plaintiffs claim such control imposed on the City a duty of care with respect to the maintenance of the intersection. We find this argument to be without merit. According to N.C. Gen. Stat. § 20-141(f) (Cum. Supp. 1996), concurring ordinances of both NCDOT and a municipality are required when the municipality wishes to alter the speed limit on a street located within the municipality's corporate limits but designated as part of the State highway system. In addition, N.C. Gen. Stat. § 136-30(b) requires that all traffic signs and other traffic control devices placed by a municipality on a street within the corporate limits of the municipality but designated as part of the State highway system must be approved by NCDOT. Thus, because the City could not alter the speed limit or install traffic signs or other traffic control devices on that portion of Hudson Boulevard intersecting Lyon Street without the approval of NCDOT, the City did not have control over the intersection. If the City did, as plaintiffs claim, make subsequent remedial measures without NCDOT approval, these measures would be unauthorized.

We note that the City also owed plaintiffs no affirmative duty to control traffic on Lyon Street. While N.C. Gen. Stat. § 160A-300 (1994) provides that "[a] city may by ordinance prohibit, regulate, divert, control, and limit pedestrian or vehicular traffic upon the public streets, sidewalks, alleys, and bridges of the city," this Court has stated that:

> "The fact that a city has the *authority* to make certain decisions, however does not mean that the city is under an *obligation* to do so. The words 'authority' and 'power' are not synonymous with the word 'duty.' . . . There is no mandate of action. Courts will not interfere with discretionary powers conferred on a municipality for the public welfare unless the exercise (or non-exercise) of those powers is so clearly unreasonable as to constitute an abuse of discretion."

*Talian v. City of Charlotte*, 98 N.C. App. 281, 287, 390 S.E.2d 737, 741 (quoting *Cooper v. Town of Southern Pines*, 58 N.C. App. 170, 173, 293 S.E.2d 235, 236 (1982)), *aff'd per curiam*, 327 N.C. 629, 398 S.E.2d 330 (1990). The case law of this jurisdiction "has consistently held that installation, maintenance and timing of traffic control signals at

intersections are discretionary governmental functions." *Talian*, 98 N.C. App. at 286, 390 S.E.2d at 741. Thus, after viewing the record in the light most favorable to plaintiffs, we conclude plaintiffs have failed to demonstrate a breach of duty owed by the City to plaintiffs with respect to the maintenance of the intersection.

[3] Plaintiffs next contend the trial court erred by granting the City's motion to dismiss because a contract existed between the City and NCDOT, whereby the City agreed to undertake and perform all maintenance, construction and supervision of the intersection. Plaintiffs argue that this contract could impose on the City a duty of care with respect to the maintenance and control of the intersection, and because this contract was not submitted to the trial court, an issue of fact exists as to the presence and interpretation of such contract.

N.C. Gen. Stat. § 136-66.1(3) states, in pertinent part, that:

Any city or town, by written contract with the Department of Transportation, may undertake to maintain, repair, improve, construct, reconstruct or widen those streets within municipal limits which form a part of the State highway system, and may also, by written contract with the Department of Transportation, undertake to install, repair and maintain highway signs and markings, electric traffic signals and other traffic-control devices on such streets.

However, "[s]uch contract does not change the status of the street from one which is a part of the State highway system to one which is part of the city system . . . ." *Matternes v. City of Winston-Salem*, 286 N.C. 1, 11, 209 S.E.2d 481, 487 (1974). Thus, the existence of a contract between a city or town and NCDOT for the maintenance of a street within the State highway system does not automatically shift liability for injury from NCDOT to the city or town; such liability must arise expressly out of the contract. *Id.* at 11, 209 S.E.2d at 486. Because "[t]he general rule is that one who is not a party to a contract may not maintain an action for its breach," plaintiffs were required to show they were third-party beneficiaries to the contract between the City and NCDOT in order to bring an action for the contract's breach. *Id.* at 12, 209 S.E.2d at 487.

To maintain a suit for breach of contract on a third-party beneficiary theory, plaintiffs must allege in their complaint: " '(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into

for [their] direct, and not incidental, benefit.' " *Metric Constructors, Inc. v. Industrial Risk Insurers,* 102 N.C. App. 59, 63, 401 S.E.2d 126, 129 (citations omitted), *aff'd per curiam,* 330 N.C. 439, 410 S.E.2d 392 (1991). Here, plaintiffs did not allege in their complaint that a contract existed between the City and NCDOT for the maintenance of the intersection, nor did it present a contract to the trial court. Based on the complaint and submissions as presented to the trial court, plaintiffs have not alleged a cause of action for breach of contract on a third-party beneficiary theory.

For the above reasons, we conclude the trial court properly granted summary judgment in favor of the City.

Affirmed.

Judges MARTIN, John C., and JOHN concur.