IN THE MATTER OF THE ESTATE OF JOHN L. REDDING, INCOMPETENT, THROUGH HIS GENERAL GUARDIAN, THOMAS GARY REDDING; THOMAS GARY REDDING, INDIVIDUALLY; BLANCHE REDDING; AND REBECCA REDDING; PLAINTIFFS-APPELLANTS v. THOMAS A. WELBORN, ALSO KNOWN AS (AKA) AND DOING BUSINESS AS (DBA) WELBORN AND ASSOCIATES, AND AKA AND DBA WELBORN AND ASSO-CIATES, INC.; AKA AND DBA SELECT MARKETING PLANS, INC.; AKA AND DBA NORTHWEST GENERAL INSURANCE AGENCY; ROGER RUSSELL; SELECT MARKETING PLANS, INC.; FINANCIAL INDEPENDENCE GROUP, INC.; LIFEUSA INSURANCE COMPANY; AND ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA (AKA ALLIANZ LIFE, AND LIFEUSA), ALL OF THE ABOVE DBA LIFEUSA; DEFENDANTS-APPELLEES

No. COA04-529

(Filed 17 May 2005)

**1. Appeal and Error— appealability—partial summary judgment—one of several defendants—vicarious liability—substantial right**

A substantial right was affected and a summary judgment for one of several defendants was immediately appealable where the claims against this defendant were based on vicarious liability for the actions of other defendants, many of the same factual issues apply, and inconsistent verdicts could result.

**2. Employer and Employee— sale of annuities—independent contractors**

An annuity company was not vicariously liable for agents which sold its policies, and summary judgment was correctly granted for that company, where the evidence supported only the conclusion that the agents were independent contractors and not employees of the company.

**3. Agency— actual or apparent authority—investment sales—knowledge of purchaser**

Agents who sold an annuity were not the actual or apparent agents of defendant-annuity company, and summary judgment was properly granted for the annuity company, where the undisputed evidence was that plaintiffs knew that the agents were not acting as representatives of the annuity company when they made the bad investment with which this case is concerned.

**4. Agency— statutory agency—abusive insurance practices not involved**

Chapter 58 of the North Carolina General Statutes did not create a "statutory agency" in two agents who sold an annuity, and

IN RE ESTATE OF REDDING v. WELBORN

[170 N.C. App. 324 (2005)]

summary judgment was correctly granted for the annuity company, because the dispute did not involve the application for or solicitation of insurance and the annuity company was not attempting to avoid payment of benefits.

### 5. Insurance— annuities—"negligent servicing"

An annuity company was not liable for the "negligent servicing" of its annuities, and summary judgment was correctly granted for it, where the only support for the claim was an unpublished federal opinion from Texas that plaintiff misinterpreted.

Appeal by plaintiffs-appellants from order entered 12 August 2003 by Judge Russell G. Walker, Jr. in Superior Court, Yadkin County. Heard in the Court of Appeals 25 January 2005.

*George Francisco, PC, by George Francisco, for plaintiffs-appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Brian J. McMillan; Leonard, Street & Deinard, P.A., by Donald T. Campbell, for defendants-appellees.*

McGEE, Judge.

Plaintiffs appeal from the trial court's order entering summary judgment in favor of defendants LifeUSA Insurance Company and Allianz Life Insurance Company of North America (collectively LifeUSA[1]).

LifeUSA, an insurance and securities broker, offers a variety of insurance products, including fixed annuities. LifeUSA sold its products through state-licensed independent insurance agents (agents) with whom LifeUSA entered into agent agreements. The agent agreements authorized agents to solicit applications for LifeUSA's products.

Defendant Select Marketing Plans, Inc. (SMP) was engaged in the business of serving as a field representative for several insurance companies. SMP selected agents to market various insurance prod-

---

1. LifeUSA Insurance Company became a wholly-owned subsidiary of Allianz Life Insurance Company of North America (Allianz Life) in July 1999. LifeUSA Insurance Company merged into Allianz Life in July 2002, with Allianz Life as the surviving entity. The transactions at issue in this case occurred between plaintiffs and LifeUSA Insurance Company. We therefore refer to defendants LifeUSA Insurance Company and Allianz Life, collectively, as LifeUSA.

ucts, including insurance products offered by LifeUSA. Defendant Thomas Welborn (Welborn) was an officer, director, and shareholder of SMP. Welborn also acted as an independent agent of SMP, and sold insurance products from companies represented by SMP. Defendant Roger Russell (Russell) acted as a subagent for SMP and Welborn.

Welborn and Russell entered into agent agreements with LifeUSA. The agent agreements contained the following provisions:

2. AGENT RIGHTS AND RESPONSIBILITIES

   a. INDEPENDENCE. As an independent contractor, you are free to exercise your discretion and judgment as to time, place, and means of performing all acts hereunder. Nothing in this AGREEMENT is intended to create a relationship of employer and employee between us and you.

   b. FREEDOM OF CHOICE. You are free to contract with other insurance companies.

   . . . .

   d. AUTHORITY. We authorize you, subject to the provisions of this AGREEMENT:

      1. to solicit personally and through your properly licensed agents, who have entered into an Agent Agreement with us at your request (your agents), applications for policies described in the SCHEDULE OF COMMISSIONS and commission guidelines and promptly to forward the applications to us for our consideration,

      2. to collect the full initial premium for policies to be issued and promptly to submit all premium[s] collected to the Company,

      3. to deliver policies in accordance with any delivery requirements of the Company on a timely basis, and

      4. to make reasonable efforts to maintain your and the Company's policies in force and to provide reasonable assistance to your and the Company's policyholders.

   e. COMMISSIONS. We will pay you, as full compensation for all services rendered and expenses incurred by you, first year and renewal commissions at the rates provided and subject to the terms and conditions contained in the

attached SCHEDULE OF COMMISSIONS and commission guidelines. These commissions will accrue on premiums paid in cash to us for policies issued from applications procured by you while this AGREEMENT is in effect.

. . . .

3. COMPANY RIGHTS AND RESPONSIBILITIES

  a. RESERVATION OF AUTHORITY. The Company reserves and retains the exclusive authority, and your authority does not permit you to:

  . . . .

  10. exercise any authority on our behalf other than as authorized by paragraph 2(d)[.]

Russell began selling the LifeUSA annuities that are the subject of this action to plaintiffs in 1993. The applications for the annuities contained the following provision:

Full or Partial Surrender—Prior to the Annuity Date, you may request a full surrender of this policy for its Cash Value. A partial surrender of the Cash Value may also be requested. A table of Cash Surrender Values is included in the policy.

The Annuitization Value will be reduced proportionately to the reduction in the Cash Value as a result of any partial surrenders.

Plaintiffs contacted Russell in 1997 and inquired about alternative investments that would yield a higher rate of return than the LifeUSA annuities. Russell put plaintiffs in contact with Welborn. Both Welborn and Russell met with plaintiffs and Welborn talked with plaintiffs about investing in ETS Payphones, Inc. (ETS). Under the terms of this investment, plaintiffs purchased payphones from BEE Communications, LLC, and then leased the payphones back to ETS. Plaintiffs made five investments in ETS, as follows: $84,000 on 3 October 1997; $54,000 on 2 December 1997; $6,000 on 15 July 1998; $196,000 on 10 February 1999; and $196,000 on 17 March 1999. Plaintiffs obtained the funds for the last two investments by surrendering their LifeUSA annuities.

When plaintiffs opted to surrender their LifeUSA annuities, they received "Conservation Letters" from LifeUSA, which stated in relevant part:

[W]e have enjoyed servicing your annuity needs. We are disappointed to learn of your recent request to terminate your policy.

We feel it is important for you to know what you will **forfeit** by surrendering your policy.

You may decide to surrender this policy at any time. However, if you decide to annuitize this contract for at least a [five or ten] year period, you will receive the much higher **Annuitization Value**.

. . . .

If you wish to keep your policy, contact us at [telephone number]. If we don't hear from you, your check will be mailed in approximately three weeks.

Each letter stated the dollar value penalty for the early surrender of the annuity policies.

ETS filed for bankruptcy in September 2000. As a result, ETS stopped making lease payments to plaintiffs and plaintiffs' investments in the payphones became worthless. Plaintiffs filed suit against, *inter alia*, Welborn, Russell, and LifeUSA. The causes of action against Welborn and Russell relevant to this appeal are negligence, negligent misrepresentation, and unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 58-63-15(1) (2003). Plaintiffs sought recovery against LifeUSA on the theory that LifeUSA was vicariously liable for Welborn's and Russell's tortious actions. In an order entered 12 August 2003, the trial court granted LifeUSA's motion for summary judgment disposing of all claims against LifeUSA.

I.

[1] We must first determine whether this case is properly before this Court. An appeal from a trial court's order of summary judgment for less than all the defendants in a case is ordinarily interlocutory, and therefore untimely. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 211, 580 S.E.2d 732, 734 (2003), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). However, an order is immediately appealable when it affects a substantial right. *State ex rel. Easley v. Rich Food Servs., Inc.*, 139 N.C. App. 691, 695, 535 S.E.2d 84, 87 (2000). A substantial right is affected when "(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *N.C. Dept. of Transportation v. Page,*

119 N.C. App. 730, 735-36, 460 S.E.2d 332, 335 (1995); *see also Camp v. Leonard*, 133 N.C. App. 554, 558, 515 S.E.2d 909, 912 (1999).

In this case, the trial court granted LifeUSA's motion for summary judgment disposing of all claims against LifeUSA. However, claims still existed against the remaining defendants, including Welborn and Russell. Since plaintiffs' theory of LifeUSA's liability is that LifeUSA is vicariously liable for Welborn's and Russell's actions, many of the same factual issues would apply to the claims against defendants and inconsistent verdicts could result from separate trials. Therefore, we find that a substantial right is affected and that this appeal is properly before this Court.

## II.

In order to prevail on a motion for summary judgment, the movant has the burden of proving that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003); *Livingston v. Adams Kleemeier Hagan Hannah & Fouts*, 163 N.C. App. 397, 402, 594 S.E.2d 44, 48, *disc. review denied*, 359 N.C. 190, 607 S.E.2d 275 (2004). This burden can be met "(1) by showing an essential element of the opposing party's claim is nonexistent or cannot be proven, or (2) by showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Belcher v. Fleetwood Enters., Inc.*, 162 N.C. App. 80, 84, 590 S.E.2d 15, 18 (2004).

Once a party has come forward with a forecast of evidence tending to support the party's motion for summary judgment, the burden shifts to the opposing party to show that the opposing party "will be able to make out at least a prima facie case at trial." *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). In addition, the party "must set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2003). "An issue is deemed genuine 'if it is supported by substantial evidence,' and 'a fact is material if it would constitute or would irrevocably establish any material element of a claim or a defense.' " *Finley Forest Condo. Ass'n v. Perry*, 163 N.C. App. 735, 738, 594 S.E.2d 227, 230 (2004) (citations omitted). When evaluating a motion for summary judgment, the trial court must take the evidence in the light most favorable to the non-moving party, and "[a]ll inferences of fact must be drawn against the movant and in favor of the nonmovant."

*Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992).

### III.

**[2]** Plaintiffs argue that the trial court erred in granting summary judgment in favor of LifeUSA because a genuine issue of material fact existed regarding whether LifeUSA was vicariously liable for the actions of Welborn and Russell.

When an employee commits a tort while acting within the scope of employment, the tort can be imputed to the employer under the doctrine of *respondeat superior. MGM Transport Corp. v. Cain*, 128 N.C. App. 428, 430-31, 496 S.E.2d 822, 824 (1998). However, "the rule is well settled in North Carolina" that the torts committed by an independent contractor are not imputed to the employer. *Market America, Inc. v. Christman-Orth*, 135 N.C. App. 143, 152, 520 S.E.2d 570, 577 (1999), *disc. review denied*, 351 N.C. 358, 542 S.E.2d 213 (2000); *see also* David A. Logan & Wayne A. Logan, *North Carolina Torts* 233 (1996). Although a contract may designate that an employer-independent contractor, rather than an employer-employee, relationship exists, the terms of the contract are not controlling. *Johnson v. News & Observer Pub. Co.*, 167 N.C. App. 86, 89, 604 S.E.2d 344, 347 (2004). Rather, "[w]hether a party is an independent contractor is a mixed question of law and fact." *Id.* at 88, 604 S.E.2d at 346. While determining the terms of the agreement is a question of fact, whether or not that agreement establishes an independent contractor relationship is a question of law. *Yelverton v. Lamm*, 94 N.C. App. 536, 538, 380 S.E.2d 621, 623 (1989). " '[W]here the facts are undisputed or the evidence is susceptible of only a single inference and a single conclusion, the court must determine whether a party is an employee or an independent contractor as a matter of law.' " *Johnson*, 167 N.C. App. at 88, 604 S.E.2d at 346 (alteration in original) (citation omitted).

Our Supreme Court has established the factors that must be considered when determining whether an employee is an independent contractor:

> [Whether] [t]he person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is

not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.

*Hayes v. Elon College*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944). In addition, we have held that "[a] life insurance agent who is employed solely to bring about contractual relations between his principal and others on his own initiative, without being subject to the principal's direction as to how he shall accomplish results, is ordinarily held to be an independent contractor." *Little v. Poole*, 11 N.C. App. 597, 602, 182 S.E.2d 206, 209-10 (1971).

We find that the evidence in this case only supports the conclusion that Welborn and Russell were independent contractors, and not employees, of LifeUSA. The facts are undisputed that Welborn and Russell acted with complete autonomy and used their independent skills when selling products for LifeUSA. Welborn and Russell were independently licensed by the State of North Carolina as insurance agents and were not paid a salary, but rather commissions based "upon a quantitative basis." *Hayes*, 224 N.C. at 16, 29 S.E.2d at 140. Welborn and Russell were permitted to sell the products of any other insurance company, and indeed testified at their depositions that they did sell other insurance companies' products. Welborn also had full autonomy in recruiting, supervising, training and supporting his subagents. Therefore, even assuming *arguendo* that Welborn and Russell committed torts, LifeUSA cannot be vicariously liable for these torts because Welborn and Russell were independent contractors of LifeUSA.

**[3]** Plaintiffs argue that even if Welborn and Russell are determined to be independent contractors of LifeUSA, LifeUSA is nevertheless vicariously liable for their actions because Welborn and Russell were LifeUSA's actual or apparent agents. Again, even assuming *arguendo* that Welborn and Russell committed torts, we find that plaintiffs have failed to present sufficient evidence to establish a genuine issue of material fact of whether Welborn and Russell were LifeUSA's actual or apparent agents. A third party acquires no rights against a principal when the third party has either actual or constructive knowledge of what the principal has authorized his agent to do. *Branch v. High Rock Lake Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 253 (2002), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003); *Rollins v. Miller Roofing Co.*, 55 N.C. App. 158, 161, 284 S.E.2d 697,

700 (1981); *see also Investment Properties v. Allen,* 283 N.C. 277, 285-86, 196 S.E.2d 262, 267 (1973).

In this case, the evidence is undisputed that plaintiffs knew that Welborn and Russell were not acting as representatives of LifeUSA when plaintiffs invested in ETS. Plaintiff Blanche Redding gave the following testimony at her deposition:

Q. You understand that ETS—ETS and LifeUSA are not the same, correct?

A. Yes.

Q. You agree with me that they are completely different companies?

A. Yes.

Q. You understand that LifeUSA does not sell pay phones, correct?

A. Yes.

Q. Did you—were you ever presented with any documentation from Mr. Welborn or from Mr. Russell that would suggest—that suggested to you that LifeUSA and ETS or BEE Communications were affiliated in any way?

A. No.

Q. And did either [Mr. Welborn or Mr. Russell] make any representations to you that LifeUSA and BEE Communications or ETS were affiliated in any way?

A. No.

Similarly, plaintiff Rebecca Redding's testimony shows an understanding that Welborn and Russell were not acting within their scope as LifeUSA agents when plaintiffs purchased the ETS investments:

Q. So you knew that LifeUSA was a completely different entity than ETS pay phones, correct?

A. Oh, yes.

. . . .

Q. [A]t the meeting that you attended Mr. Russell and Mr. Welborn weren't conducting business on behalf of LifeUSA, were they?

**IN RE ESTATE OF REDDING v. WELBORN**

[170 N.C. App. 324 (2005)]

A. No, sir.

Q. In fact, they were selling ETS pay phones?

[ATTORNEY FOR RUSSELL]: Object to the form.

. . . .

Q. Is that your understanding?

A. Yes.

Q. And you understand ETS and LifeUSA are not the same thing?

A. That's correct.

Q. Now, do you have any idea why it would be in LifeUSA's benefit to have their agents surrendering their policies? What benefit would they derive from that?

A. I would say they have no benefit.

Furthermore, the "Conservation Letters" sent by LifeUSA to plaintiffs clearly gave plaintiffs notice that Welborn and Russell were not acting within any authority conferred by LifeUSA when they helped plaintiffs surrender the annuities to invest in the payphones. Blanche Redding admitted receiving these letters and understanding their content:

Q. And would you agree that these letters from LifeUSA are advising you that they're disappointed to learn of your decision to terminate the policy and they explain to you what the damages or the potential loss will be if you decide to forfeit these policies?

A. Yes, uh-huh.

Q. Do you . . . as you sit here recall receiving these letters?

A. Yes.

Q. And would you also agree with me that the last paragraph of . . . each of those seven letters indicates that if you should change your mind, if you wish to keep the policy, to please contact them at the 1-800 number?

A. Yes.

. . . .

Q. After you received these letters, . . . apparently you didn't change your mind on your decision to surrender those annuities?

A. No.

Q. You still went forward with the surrender?

A. Yes.

Since plaintiffs knew that Welborn and Russell were not acting as LifeUSA agents when plaintiffs purchased the payphones, we find that there is no genuine issue of material fact as to whether plaintiffs had knowledge that Welborn and Russell's actions were outside the scope of what LifeUSA had authorized them to do. As a result, plaintiffs can acquire no rights against LifeUSA.

[4] We also reject plaintiffs' argument that Welborn and Russell were LifeUSA's "statutory agents" by virtue of Chapter 58 of the North Carolina General Statutes. N.C. Gen. Stat. § 58-33-20(a) (2003) states:

Every agent or limited representative who *solicits or negotiates an application for insurance of any kind,* in any controversy between the insured or his beneficiary and the insurer, is regarded as representing the insurer and not the insured or his beneficiary. *This provision does not affect the apparent authority of an agent.*

(emphases added). Similarly, N.C. Gen. Stat. § 58-58-30 (2003) provides: "A person who solicits an application for insurance upon the life of another, in any controversy relating thereto between the insured or his beneficiary and the company issuing a policy upon such application, is the agent of the company and not of the insured."

In interpreting these statutory provisions, we find our Supreme Court's interpretation of N.C. Gen. Stat. § 58-197, the predecessor to N.C. Gen. Stat. § 58-58-30, instructive:

We note that a majority of states have a statute similar to [N.C.]G.S. 58-197. Many of those statutes were enacted in the early part of this century to curb abusive practices on the part of insurance companies which would issue policies but avoid paying benefits provided under the terms of the policies by finding technical defects in agents' authority to bind the companies.

*Northern Nat'l Life Ins. v. Miller Machine Co.,* 311 N.C. 62, 71, 316 S.E.2d 256, 262 (1984) (citations omitted). We also note that the

only reported case interpreting N.C. Gen. Stat. § 58-33-20 involved a dispute over an insurance company's obligation to pay benefits when the agent filled out the application for insurance. *Webster Enterprises, Inc. v. Selective Insurance Co.*, 125 N.C. App. 36, 45, 479 S.E.2d 243, 249 (1997). In the present case, LifeUSA is not attempting to avoid paying benefits under an insurance policy, nor does the dispute involve the application or solicitation of insurance. Therefore, we find that Chapter 58 does not create a "statutory agency" whereby LifeUSA would be vicariously liable for Welborn's or Russell's actions.

## IV.

[5] Finally, we consider plaintiffs' argument that the trial court erred in entering summary judgment for LifeUSA because the separate cause of action "negligent servicing of annuities" exists against LifeUSA. We disagree. Plaintiffs have failed to support this argument with any North Carolina case law, but rather rely on an unpublished opinion from the United States District Court for the Northern District of Texas. *American Automobile Insurance Co. v. Grimes* (No. Civ.A.5:02-CV066-C) (10 February 2004). Furthermore, we disagree with plaintiffs' interpretation of *Grimes*. In *Grimes*, the plaintiff insurance provider sought a declaratory judgment for a determination of whether the plaintiff was obligated to defend and indemnify an insurance agent under the agent's "Life Insurance Agents Errors and Omissions Liability Insurance Policy." The insurance agent had been successfully sued for negligently advising his clients to transfer the clients' annuity funds into a payphone leasing scheme and for negligently and fraudulently misrepresenting the nature of the payphone scheme. However, the annuity provider was never made a party to any of the lawsuits, nor did the court consider any possibility of liability that the annuity provider may have had. Therefore, *Grimes* does not support the proposition that LifeUSA may be liable for the negligent servicing of its annuities, and we reject plaintiffs' argument.

Affirmed.

Judges HUDSON and TYSON concur.