REBECCA KENNEDY AND CHARLES L. KENNEDY, CO-ADMINISTRATORS OF THE ESTATE OF EMILY ELIZABETH MAY, PLAINTIFFS-APPELLANTS V. DANIELLE POLUMBO, BRANDI REAVES, CAROLINA HOSPITALITY OF FLORIDA, INC. D/B/A CAROLINA HOSPITALITY, INC., FAYETTEVILLE MIYABI, INC., ACS STATE & LOCAL SOLUTIONS, INC., AND THE CITY OF FAYETTEVILLE, NORTH CAROLINA, DEFENDANTS

No. COA10-389
No. COA10-586

(Filed 1 February 2011)

**1. Appeal and Error— Rules violations—transcript—not jurisdictional or substantial**

The Rules of Appellate Procedure which deal with the time ·and manner for ordering, preparation, and delivery of the transcript (Rules 7(a)(1) and 7(b)(2)) are not jurisdictional and violations that were not substantial or gross did not result in sanctions.

**2. Appeal and Error— interlocutory orders and appeals—partial summary judgments—common defenses—substantial right**

Appeals from summary judgments for some but not all of the parties were from interlocutory orders, but were not dismissed because there were common factual defenses, raising the possibility of inconsistent verdicts. Determination of the underlying substantive appeal promoted finality rather than fragmentation.

**3. Negligence— car striking utility pole—duty of City—proximate cause**

The trial court properly granted summary judgment for defendant City in a negligence claim that arose from a single car accident in which plaintiffs' decedent was killed when the car in which she was a passenger struck a utility pole on a highway and a red-light camera fell onto and collapsed the car roof. The City did not have an affirmative or contractual duty to plaintiffs to maintain the highway in a safe condition for decedent, and the intervening negligence of the driver was the proximate cause of decedent's injuries.

**4. Negligence— contributory—riding with impaired driver**

The trial court properly granted summary judgment for the City and the owner and operator of a red-light camera where plaintiffs' decedent was killed in an automobile accident when the car in which she was a passenger struck a utility pole and a

red-light camera collapsed the roof of the car directly above decedent. The deceased was contributorily negligent in voluntarily riding with an appreciably impaired driver.

Appeal by plaintiffs from judgments entered 18 November 2009 and 23 November 2009 by Judge Jack A. Thompson in Cumberland County Superior Court. Heard in the Court of Appeals 1 November 2010.

*James A. Davis & Associate, PLLC, by James A. David and Christopher D. Lane, for plaintiffs-appellants.*

*Robinson & Lawing, L.L.P., by Robert J. Lawing and H. Brent Helms, for defendant-appellee ACS State & Local Solutions.*

*The Charleston Group, by R. Jonathan Charleston and Jose A. Coker, and Graebe Hanna & Welborn, PLLC, by Mark R. Sigmon, for defendant-appellee City of Fayetteville.*

MARTIN, Chief Judge.

Plaintiffs are the co-administrators of the Estate of Emily Elizabeth May, who died tragically during the early morning hours of 17 May 2007 as a result of injuries sustained when the automobile in which she was a passenger struck a utility pole. Plaintiffs filed suit alleging that Ms. May's death was proximately caused by separate acts of negligence on the part of Danielle Polumbo, the driver of the automobile; Carolina Hospitality of Florida, Inc., d/b/a Carolina Hospitality, Inc. ("Carolina Hospitality"), the operator of a nightclub where Ms. Polumbo and Ms. May had been patrons prior to the accident; Brandi Reaves, a bartender at that establishment; ACS State and Local Solutions, Inc. ("ACS"), the owner and operator of a red-light camera which was mounted on the utility pole and fell onto the automobile as a result of the collision; and the City of Fayetteville ("the City"). Only the plaintiffs' claims against ACS and the City are at issue in this appeal.

Both ACS and the City filed responsive pleadings denying, respectively, any negligence on their part and asserting affirmative defenses including, *inter alia*, the decedent's contributory negligence, the insulating negligence of other defendants, and the intervening negligence of other defendants. The City also asserted immunity. Both ACS and the City moved for summary judgment.

The materials before the trial court upon its hearing the motions for summary judgment tended, in summary, to show that Emily

KENNEDY v. POLUMBO

[209 N.C. App. 394 (2011)]

Elizabeth May and Danielle Polumbo were close friends and spent the evening of 16 May 2007 together in Fayetteville, having dinner at Miyabi's Japanese restaurant and then finishing their evening at Secrets Cabaret ("Secrets"), which is operated by Carolina Hospitality. Both Ms. May and Ms. Polumbo had been drinking alcohol throughout the evening.

Ms. May and Ms. Polumbo left Secrets sometime around 1:00 a.m. on 17 May 2007. Ms. Polumbo drove, and Ms. May rode in the front passenger seat of Ms. Polumbo's Ford Mustang. Within a few minutes after leaving the parking lot of Secrets, Ms. Polumbo was driving northbound on N.C. Highway 24, Bragg Boulevard, at Shannon Drive when she attempted to make a left-hand turn onto Sycamore Dairy Road. Unfortunately, Ms. Polumbo misjudged the turn, drove her car into the concrete median, and collided with a utility pole. A red-light camera was mounted on the utility pole and, upon impact, fell onto the roof of the Ford Mustang directly above Ms. May, who was struck by the collapsing roof.

At approximately 1:23 a.m., Officer W.D. Watson of the Fayetteville Police Department arrived at the scene and observed that Ms. Polumbo smelled strongly of alcohol, her speech was slurred, and she was unsteady on her feet. Ms. Polumbo was arrested and transported to the Cumberland County Jail. At the jail, Ms. Polumbo had problems balancing and following directions during a field sobriety test. Ms. Polumbo also took two breathalyzer tests at the jail and registered alcohol concentrations of .18 and .17, more than twice the legally permitted alcohol concentration. See N.C. Gen. Stat. §20-138.1 (2009) (defining the offense of impaired driving as driving a vehicle upon a public roadway with an alcohol concentration of .08 or more). Meanwhile, Ms. May was taken to Cape Fear Medical Center where, unfortunately, she died as a result of her injuries. Ms. Polumbo subsequently pled guilty to felony death by motor vehicle, reckless driving to endanger, driving after consuming alcohol while under the age of 21, and driving while impaired.

The trial court granted summary judgment in favor of ACS by judgment dated 18 November 2009, and in favor of the City of Fayetteville by judgment dated 23 November 2009. Plaintiffs appeal from both judgments; their appeals have been consolidated by order of this Court entered 18 August 2010.

KENNEDY v. POLUMBO

[209 N.C. App. 394 (2011)]

I.

[1] Defendants have moved to dismiss these appeals as (1) violating Rules 7(a)(1) and 7(b)(2) of the Rules of Appellate Procedure and (2) as interlocutory. With respect to defendants' contentions that plaintiffs' alleged violations of the Rules of Appellate Procedure mandate dismissal of their appeals, we note that "noncompliance with the appellate rules does not, *ipso facto*, mandate dismissal of an appeal." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 194, 657 S.E.2d 361, 363, *on remand*, 192 N.C. App. 114, 665 S.E.2d 493 (2008), *disc. review denied*, 363 N.C. 580, 681 S.E.2d 783 (2009). "Whether and how a court may excuse noncompliance with the rules depends on the nature of the default." *Id.* Notably, "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Id.* at 198, 657 S.E.2d at 365. Neither Rule 7(a)(1) nor Rule 7 (b)(2), which deal with the time and manner for ordering, preparation, and delivery of the transcript of the proceedings, are jurisdictional rule requirements. We will "not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' " *Id.* at 199, 657 S.E.2d at 366. "In such instances, the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible." *Id.*

[2] With respect to the second ground for defendants' motion to dismiss the appeal, we agree that plaintiffs' appeals are from interlocutory orders, as their claims against the remaining defendants are still pending. *See Myers v. Barringer*, 101 N.C. App. 168, 172, 398 S.E.2d 615, 617 (1995) ("Summary judgment granted to some but not all defendants is an interlocutory judgment."). However, we may consider an immediate appeal from an interlocutory order if the order affects a substantial right of the appealing party. *In re Estate of Redding v. Welborn*, 170 N.C. App. 324, 328, 612 S.E.2d 664, 668 (2005). "A substantial right is affected when '(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exists." *Id.* (citing *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 735-36, 460 S.E.2d 332, 335 (1995)).

In the present case, the order granting summary judgment to ACS and the City terminates plaintiffs' action as to those Defendants. However, plaintiffs' claims against the remaining defendants, including

Ms. Polumbo, Ms. Reaves, and Carolina Hospitality, are still pending and some of the same factual defenses, including the contributory negligence of Ms. May, would apply to those defendants as apply to the present Defendants. Thus, there is the possibility of inconsistent verdicts should we dismiss the present appeals and require plaintiffs to proceed to a final judgment against all defendants before considering their appeals from ACS and the City's granted summary judgment motions. *See Estate of Harvey v. Kore-Kut, Inc.*, 180 N.C. App. 195, 198-99, 636 S.E.2d 210, 212 (2006). Under these circumstances, a determination of the underlying substantive appeal will, in our view, promote finality rather than fragmentation. We conclude that the appeals are, therefore, properly before us and deny the motions to dismiss.

II.

[3] Turning to the merits of the appeal from the order granting summary judgment in favor of the City, plaintiffs argue that the trial court committed reversible error because there are genuine issues of material fact which preclude judgment as a matter of law. The standard of review of a trial court's order granting summary judgment is *de novo. E.g., Nationwide Mut. Fire Ins. Co. v. Mnatsakanov*, 191 N.C. App. 802, 805, 664 S.E.2d 13, 15 (2008). "The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law." *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987). "A motion for summary judgment tests the legal sufficiency of a claim for submission to the jury. If the pleadings, depositions, interrogatories, . . . admissions on file, [and affidavits] demonstrate that there is no genuine issue of any material fact and only questions of law exist, then summary judgment is proper." *Bolick v. Townsend Co.*, 94 N.C. App. 650, 652, 381 S.E.2d 175, 176, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 495 (1989). Therefore, we must determine whether the pleadings, depositions, interrogatories and admissions on file, establish that summary judgment was warranted in this case.

The burden is on the movants to show the lack of any issue of fact. *Taylor v. Coats*, 180 N.C. App. 210, 212, 636 S.E.2d 581, 583 (2006). The moving parties, here the City and ACS, may meet this burden by proving that a necessary element of the plaintiffs' claim cannot be met or by proving that the plaintiffs cannot overcome an affirmative defense to bar the claim. *Id.* (citing *Roumillat v. Simplistic Enter., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992)).

Plaintiffs allege in their complaint that the City breached its "duty to exercise ordinary care to maintain its streets and public ways in a reasonably safe condition for all who use them in a proper manner." They also allege that the City, pursuant to a 30 November 1999 contract with ACS, agreed "to perform certain acts under the Safelight Program for the City of Fayetteville."

The City responds that it is entitled to summary judgment for a number of reasons. One of the reasons asserted by the City is that it had no duty—contractual or otherwise—to maintain Highway N.C. 24 in a safe condition for the benefit of plaintiffs' decedent. Rather the City asserts that the duty belonged to the North Carolina Department of Transportation ("NCDOT"). The City further asserts that, even if another party along with the NCDOT could be negligent, it would not be the City, as it was ACS's predecessor, Lockheed Martin, who was responsible for the installation and maintenance of the red-light camera and plaintiffs did not in their complaint allege any theory of *respondeat superior*. The City additionally argues that it was not negligence as a matter of law for the camera to be installed on the raised median, that the City is entitled to the benefit of governmental immunity, and that, in any event, Ms. May was contributorily negligent as a matter of law.

The trial court did not state a specific basis for granting the motion for summary judgment, but we conclude that there are at least three bases for upholding its order. Thus, we affirm the trial court's granting of the City's summary judgment motion.

First we note that the City owed plaintiffs no affirmative duty to keep N.C. 24 in a safe condition for plaintiffs' decedent, Ms. May. Plaintiffs allege in their complaint that:

The law requires cities to keep their streets and public ways in proper repair, open for travel, and free from unnecessary hazards or obstructions. This means that every city has a duty to exercise ordinary care to maintain its streets and public ways in a reasonably safe condition for all who use them in a proper manner. A breach of this duty is negligence.

However, this legal allegation, the wording of which is apparently drawn from N.C.G.S. § 160A-296(a)(2), is inapplicable to the present case as N.C. 24 is not the City's street or public way. All parties agree that N.C. 24, Bragg Boulevard, is a state highway. Municipalities do not generally owe any duty to individuals injured on roads that are

part of the state highway system. N.C. Gen. Stat. § 160A-297 (2009); *see also Jiggetts v. City of Gastonia*, 128 N.C. App. 410, 413, 497 S.E.2d 287, 290 (1998); *Columbo v. Dorrity*, 115 N.C. App. 81, 85, 443 S.E.2d. 752, 755 (1994) ("[A] municipality is not liable for accidents which occur on a street which is part of the State highway system and under the control of the NCDOT.").

There is an exception to this general rule. A plaintiff who can establish that he or she is a third party beneficiary of a contract between a municipality and the NCDOT who is injured upon the highway which is the subject of that contract may bring an action against the municipality to recover damages for injuries arising from his or her use of the highway. *E.g.*, *Matternes v. City of Winston-Salem*, 286 N.C. 1, 12, 209 S.E.2d 481, 487 (1974). In order to maintain a suit based upon this third party beneficiary breach of contract theory, the plaintiff must "show '(1) the existence of a contract between [the defendant and the NCDOT]; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for [the plaintiff's] direct, and not incidental, benefit.'" *Metric Constructors, Inc. v. Indus. Risk Insurers*, 102 N.C. App. 59, 63, 401 S.E.2d 126, 129, *aff'd*, 330 N.C. 439, 410 S.E.2d 392 (1991) (quoting *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 79 N.C. App. 81, 86, 339 S.E.2d 62, 65 (1986), *rev'd on other grounds*, 322 N.C. 200, 367 S.E.2d 609 (1988)).

The existence of a contract between a city and the NCDOT for the maintenance of a street within the state highway system does not automatically shift liability for injury from the NCDOT to the City; such liability must arise expressly out of contract. *See Jiggetts*, 128 N.C. App. at 415, 497 S.E.2d at 291. In their amended complaint, plaintiffs point to the Encroachment Agreement between the City and the NCDOT, which they claim shifted liability from the NCDOT and contractually created the City's duty of care to individuals injured on NCDOT highways within the City. Specifically they point to the following portion of the Encroachment Agreement:

[T]he [City] binds and obligates himself [sic] to install and maintain the encroaching facility in such safe and proper condition that it will not interfere with or endanger travel upon said highway, nor obstruct nor interfere with the proper maintenance thereof, to reimburse the [NCDOT] for the cost incurred for any repairs or maintenance to its roadways and structures necessary due to the installation and existence of the facilities of the [City], and if at any time the [NCDOT] shall require the removal of or changes in

the location of the said facilities, that the [City] binds himself [sic], his [sic] successors, and assigns, to promptly remove or alter the said facilities, in order to conform to the said requirement without any cost to the [NCDOT].

Plaintiffs allege in their amended complaint that the City's contractual duty "to install and maintain the encroaching facility in such safe and proper condition that it will not interfere with or endanger travel upon said highway" is consistent with the City's duties on its own streets and highways under N.C.G.S. § 160A-206(a)(2). Plaintiffs assert then that Ms. May, as a member of the traveling public, was a third-party beneficiary of the Encroachment Agreement.

The paragraph identified by plaintiffs falls short of what is required in order to shift responsibility for N.C. 24 from the NCDOT to the City. The Encroachment Agreement does not assign the City the same duties over N.C. 24 as the City has for its own streets and highways under N.C.G.S. § 160A-296(a)(2): namely, "(1) [t]he duty to keep the public streets, sidewalks, alleys, and bridges in proper repair" and "(2) [t]he duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions."

Finally, even had the Encroachment Agreement's requirement that the City maintain the red-light camera "in such [a] safe and proper condition that it [would] not interfere with or endanger travel upon said highway" been sufficient to transfer the liability for N.C. 24 from the NCDOT to the City, plaintiffs' decedent Ms. May was not a third-party beneficiary of the Encroachment Agreement. In order for plaintiffs to sue on a third-party beneficiary theory, they must show that the contract which creates the failed duty was "entered into for [their] direct, *and not incidental*, benefit." *Jiggets*, 128 N.C. App. at 415-16, 497 S.E.2d at 191 (emphasis added) (internal quotation marks omitted). The purpose of the Encroachment Agreement was not to transfer the liability for injuries to the traveling public on N.C. 24 from NCDOT to the City, making all members of the traveling public third party beneficiaries of the Encroachment Agreement. Rather, the City's contractual duties created by the Encroachment Agreement benefitted the NCDOT, in that the Agreement assured that the NCDOT's duties to maintain N.C. 24 were not made more onerous by the installation of the red-light camera. In addition to the City's obligation to assure that the red-light camera did not interfere with or endanger travel upon N.C. 24, the City was also required to reimburse

the NCDOT for any costs incurred for repair or maintenance to N.C. 24 because of the installation or existence of the red-light camera. The Encroachment Agreement also required the City to indemnify the NCDOT for any damage or claim for damage that the NCDOT may incur because of the red-light camera, to restore all area disturbed during the installation of the red-light camera, to pay for any necessary inspections, and to follow various other regulations, including solicitation and nondiscrimination requirements. In exchange, the NCDOT permitted the City to install the red light camera in order that the City's traffic ordinances could be more effectively enforced.

Thus, on this basis alone, the trial court properly granted the City's motion for summary judgment because the City had no duty to maintain Highway N.C. 24 in a safe condition for the benefit of plaintiffs' decedent, Ms. May. However, we find it worthwhile to note for the sake of clarity that, even had Ms. May been a third party beneficiary of the Encroachment Agreement, as a matter of law, the City did not breach its duty under that Agreement to "install and maintain the encroaching facility in such a safe and proper condition that it will not interfere with or endanger travel upon said highway."

"The maintenance of a utility pole along a public highway does not constitute an act of negligence unless the pole constitutes a hazard to motorists using the portion of the highway designated and intended for vehicular travel in a *proper manner*." *Mosteller v. Duke Energy Corp.*, —— N.C. App. ——, ——, 698 S.E.2d 424, 446 (2010) (quoting *Shapiro v. Toyota Motor Co., Ltd.*, 38 N.C. App. 658, 663, 248 S.E.2d 868, 871 (1978) (holding that the maintenance of a utility pole twelve and a half inches outside of the roadway on a public highway's right-of-way did not constitute an act of negligence because the pole did not constitute a hazard to motorists properly using the portion of the highway designated and intended for vehicular travel)); *see also Wood v. Carolina Tel. & Tel. Co.*, 228 N.C. 605, 607, 46 S.E.2d 717, 718 (1948) (holding that the maintenance of a utility pole six inches outside of the roadway did not constitute an act of negligence per se because the pole was located off the roadway itself in the area between the curb and the sidewalk).

Plaintiffs do not contest that Ms. Polumbo "recklessly drove her vehicle" and "improperly [turned] into the curb and [drove] onto the concrete median whereupon the vehicle struck an aluminum utility pole upon which [the] 'redlight camera' was mounted." They furthermore acknowledge that in doing so, Ms. Polumbo "improperly drove

a motor vehicle upon a concrete median area in violation of N.C.G.S. § 20-160(b)." Thus it is clear that even had the placement of the utility pole been negligent, Ms. Polumbo's intervening negligence would be the proximate cause of Ms. May's injuries. *See Mosteller*, —— N.C. App. at ——, 698 S.E.2d at 445-46. Plaintiffs argue, however, that a new distinction should be drawn because the red-light camera in the present case was an obstruction "on a traffic island within a highway itself and around which traffic may reasonably be expected to flow on a fairly constant basis."

No North Carolina caselaw draws the distinction urged upon us by plaintiffs based upon where outside the proper portion of the roadway the obstruction is located. This State's courts have only drawn a distinction based upon whether the plaintiff was properly using the portion of the highway designated and intended for vehicular travel. We hold, therefore, that, as a matter of law, the installation of the red-light camera mounted upon the utility pole did "not interfere with or endanger travel upon said highway." It was only by Ms. Polumbo improperly leaving the highway and driving her vehicle onto the concrete median area, that the collision occurred. The City did not, therefore, breach its duty under the Encroachment Agreement.

[4] Additionally, there exists at least one other basis upon which we must affirm the grant of summary judgment to the City, as well as to ACS, and that is the contributory negligence, as a matter of law, of plaintiffs' decedent Ms. May. It is well established in North Carolina that a passenger is contributorily negligent as a matter of law so to bar recovery in a negligence suit when (1) the driver of the vehicle was under the influence of an intoxicant; (2) the passenger knew or should have known that the driver was under the influence; and (3) the passenger voluntarily rode with the driver even though she knew or should have known that the driver was under the influence. *E.g., Coleman v. Hines*, 133 N.C. App. 147, 149, 515 S.E.2d 57, 59, *disc. review denied*, 350 N.C. 826, 539 S.E.2d 281 (1999). In determining whether the passenger knew or should have known that the driver was under the influence, our courts apply an "ordinary prudent man" standard. *See Taylor*, 180 N.C. App. at 213, 636 S.E.2d at 583.

Plaintiffs assert in their complaint that Ms. Polumbo was driving under the influence of alcohol, and they do not contest that Ms. May voluntarily rode with her. They argue, however, that Ms. May did not know, nor did she have reason to know, that Ms. Polumbo was under the influence of alcohol. Specifically, plaintiffs allege that:

Upon information and belief, Emily Elizabeth May did not know nor have reason to know that Defendant Polumbo had consumed alcoholic beverages while she and Defendant Polumbo were at Secrets or that Defendant Polumbo was under the influence of an intoxicating substance at the time she entered Defendant Polumbo's vehicle at the time she [and] defendant Polumbo left Secrets at approximately 1:15 am, on May 17, 2007.

Plaintiffs overlook, however, allegations in their complaint that, shortly prior to the accident, employees of defendant Carolina Hospitality continued to serve alcoholic beverages to Ms. Polumbo "after they became aware, or should have been aware in the exercise of reasonable care" that she was intoxicated. They allege that one of those employees, Ms. Reaves, served Ms. Polumbo "numerous single shot glassfuls of liquor." They allege in fact that Ms. Polumbo consumed such "a large quantity of alcoholic beverages" that she was "extremely intoxicated," "her mental and physical faculties were appreciably impaired," and her blood alcohol content was over two times the legal limit.

A party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive against the pleader. The party cannot subsequently take a position contradictory to his pleadings. *Davis v. Rigsby*, 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964) (citing *Universal C. I. T. Credit Corp. v. Saunders*, 235 N.C. 369, 372, 70 S.E.2d 176, 178 (1952)). Plaintiffs' own complaint, considered in the light most favorable to it, leads to the inescapable conclusion that Ms. May knew or should have known that Ms. Polumbo was "appreciably impaired" and, therefore, was intoxicated to a degree that she was incapable of safely operating her vehicle. If Ms. Polumbo's condition was so impaired as to have been obvious to a reasonable person in the position of defendant Ms. Reaves, the server employed by Carolina Hospitality, it was at least as obvious to Ms. May, who had spent the entire evening with Ms. Polumbo. Yet Ms. May still placed herself in a position of extreme known danger by voluntarily riding with Ms. Polumbo and, thus, Ms. May was contributorily negligent as a matter of law.

Further establishing Ms. May's contributory negligence, we note that there is additional uncontroverted evidence showing that an ordinarily prudent man in Ms. May's position either would have or should have known that Ms. Polumbo was appreciably impaired at

the time of the accident. Arriving on the scene shortly after the accident, Officer Watson was able to detect a "strong odor of alcohol" coming from Ms. Polumbo. Ms. Polumbo had trouble standing up after the accident; she "had an unsteady gait and she repeatedly stumbled and tried to regain her balance." Officer Watson noted that she was "visibly impaired," and so he arrested her and took her to Cumberland County Jail, where he administered a field sobriety test. At the jail shortly after the accident, Ms. Polumbo exhibited problems with following directions, had difficulty balancing, and blew a .17 and .18 on her two breathalyzer tests, indicating that her blood alcohol level was more than twice the legal limit. *See Taylor,* 180 N.C. App. at 214-15, 636 S.E.2d at 583-84 (holding that there was no genuine issues of material fact as to plaintiff's contributory negligence because an ordinarily prudent man would have or should have known that defendant was intoxicated when he spent seven hours with the defendant at a bar, knew at the beginning of the evening that defendant intended to drink, smelled alcohol on defendant's breath when he gave her occasional kisses over the course of the evening, and "[m]oreover, defendant blew a .18 on the breathalyzer"); *Goodman v. Connor,* 117 N.C. App. 113, 117-18, 450 S.E.2d 5, 7-8 (holding that passenger was contributorily negligent as he knew or should have known of driver's intoxicated condition when the driver's breathalyzer test registered between .10 and .11 four hours after accident, toxicological chemist testified that driver would have appeared drunk to anyone who observed him at time of accident, and state trooper who arrived at scene of accident testified that driver did appear intoxicated), *disc. review denied,* 338 N.C. 668, 453 S.E.2d 177 (1994).

We hold, therefore, that, by voluntarily riding and continuing to ride with Ms. Polumbo under such circumstances and conditions as would have compelled an ordinarily prudent man in the exercise of ordinary care for his own safety to not ride with the "appreciably impaired" Ms. Polumbo, Ms. May committed an act of contributory negligence which proximately contributed to her injuries and death as a matter of law, and which bars any recovery from ACS or the City for her death.

III.

We now turn to the merits of plaintiffs' appeal of the summary judgment order granted in favor of ACS. Plaintiffs' complaint only alleged that ACS was negligent in its installation and manufacture of the red-light camera. ACS argues that it was not negligent as a matter

of law in its placement, selection, and installation of the red-light camera and that, even if it had been negligent, its negligence is insulated by the intervening and superseding negligence of other Defendants ACS also asserts that tatute of repose bars plaintiffs' wrongful death claim against ACS and that it is immune as a matter of law because it installed the red-light camera with proper care and skill pursuant to its contract with the City. Finally, ACS asserts that any recovery for any negligence that it may have committed is barred because of the contributory negligence of Ms. May. For the reasons stated above, Ms. May's own contributory negligence bars, as a matter of law, plaintiffs' recovery from ACS and we find it unnecessary to reach the other arguments raised by the parties.

Summary Judgment in favor of the City and ACS is affirmed.

*Affirmed.*

Judges McGEE and ERVIN concur.